Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 1, 2004          Decided November 16, 2004

No. 03-1136

BOCA AIRPORT, INC., *D/B/A* BOCA AVIATION,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION,
RESPONDENT

BOCA RATON AIRPORT AUTHORITY,
INTERVENOR

———

On Petition for Review of an Order of the
Federal Aviation Administration

———

*Steven S. Rosenthal* argued the cause for petitioner. With him on the briefs was *Jeffery A. Tomasevich.*

*Teal Luthy Miller*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief were

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Peter D. Keisler*, Assistant Attorney General, and *Robert S. Greenspan* and *Peter R. Maier*, Attorneys.

*Arthur P. Berg* argued the cause for intervenor. With him on the brief were *Thomas R. Devine* and *Kenneth W. Salinger*. *David T. Ralston, Jr.* entered an appearance.

Before: ROGERS, TATEL, and GARLAND, *Circuit Judges*.

GARLAND, *Circuit Judge*: The question in this case is whether the Federal Aviation Administration (FAA) has unlawfully failed to enforce rights that the petitioner contends arise from the 19th Amendment — not the 19th Amendment to the Constitution of the United States, but the nineteenth amendment to a contract between the petitioner and the Boca Raton Airport Authority. Because that contractual amendment guarantees no federal rights to the petitioner, we deny the petition for review.

## I

Petitioner Boca Airport, Inc., which does business under the name Boca Aviation, is a "fixed-base operator," or FBO. FBOs offer such services as fueling, maintenance, and storage to aviators at public airports. Pursuant to a 1984 lease with the Boca Raton Airport Authority, Boca Aviation served as the sole FBO at the Boca Raton Airport. In 1997, Boca Aviation and the Airport Authority executed an amendment to the lease (the 15th Amendment) that gave Boca Aviation the rights to lease, develop, and manage the airport's only remaining parcel of undeveloped aviation land. Thereafter, a competitor of Boca Aviation, Boca Raton Jet Center (Boca Jet), challenged the lease amendment in a "Part 16" proceeding.

Part 16 of the FAA's regulations permits a "person directly and substantially affected by any alleged noncompliance [to] file a complaint with the Administrator." 14 C.F.R. § 16.23. The regulations define noncompliance as "anything done or omitted to be done by any person in contravention of any provision of any Act . . . as to matters within the jurisdiction of the Administrator." *Id.* § 16.3. In its Part 16 complaint, Boca Jet alleged that the Authority's grant to Boca Aviation

of the rights to the remaining parcel violated the exclusive rights provision of the Airport and Airway Improvement Act of 1982, 49 U.S.C. § 47107(a)(4). That provision states that the "Secretary of Transportation may approve a project grant application . . . for an airport development project only if the Secretary receives written assurances . . . that . . . a person providing, or intending to provide, aeronautical services to the public will not be given an exclusive right to use the airport. . . ."[1] The FAA, in turn, requires airports that receive federal financial assistance to comply with a variety of "grant assurances," one of which — Grant Assurance No. 23 — prohibits endowing aeronautical service providers with exclusive rights. *See* Director's Determination, *Boca Raton Jet Center, Inc. v. Boca Raton Airport Auth.*, FAA Docket No. 16-97-06, 1997 WL 1120747, at *3 (FAA Dec. 22, 1997) [*Boca Jet Initial Director's Determination*].

On December 22, 1997, David L. Bennett, the FAA's Director of Airport Safety and Standards, agreed with Boca Jet that the Airport Authority, by "leasing the last remaining parcel of aviation land to Boca Aviation, [was] in noncompliance with the provisions regarding exclusive rights as set forth in 49 U.S.C. Section 47107(a)(4) and the Authority's Federal grant agreements." *Boca Jet Initial Director's Determination*, at *1. This Initial Director's Determination ordered the Authority to present a Corrective Action Plan (CAP) that would end Boca Aviation's exclusive right to serve as the airport's FBO, and warned that the Authority's failure to do so would render it ineligible for any FAA grants. *See id.* at *14.

---

[1] An exception to this provision states that "a right given to only one fixed-base operator to provide services at an airport" will be deemed not to be an exclusive right if it "would be unreasonably costly, burdensome, or impractical for more than one fixed-base operator to provide the services; and . . . allowing more than one fixed-base operator to provide the services would require reducing the space leased under an existing agreement between the one fixed-base operator and the airport owner or operator." 49 U.S.C. § 47107(a)(4).

In September 1998, after meeting with the FAA to obtain further guidance on an acceptable plan, the Airport Authority submitted the 19th Amendment to the lease, which terminated the 15th Amendment and with it Boca Aviation's rights to the undeveloped parcel. The 19th Amendment explained that "the Lessor and Lessee have determined that it would be in the best interests of the Airport, the public and its users to terminate" Boca Aviation's lease for the parcel, "so as to cause the reinstatement of FDOT funding and the resolution of the pending Part 16 Action." J.A. 376. The Amendment further stated that the Authority would submit a plan that "shall provide for the construction, development and operation by the [Authority]" of facilities on the parcel. *Id.* On August 20, 1999, the Director issued a Final Director's Determination, concluding that the amended lease cured the exclusive rights problem and dismissing Boca Jet's complaint. Final Director's Determination, *Boca Raton Jet Center, Inc. v. Boca Raton Airport Auth.*, FAA Docket No. 16-97-06, 1999 WL 732710, at *2-*3 (FAA Aug. 20, 1999) [*Boca Jet Final Director's Determination*].

In January 2000, the Airport Authority decided to have a third party — rather than the Authority itself — develop the parcel. Pursuant to that decision, the Authority issued a Request for Proposals. Because Boca Aviation was the sole FBO at the airport, the Authority did not permit it to bid. In June 2000, the Authority signed a lease agreement for development of the parcel with Premier Aviation of Boca Raton, LLC.

Beginning in January 2000, Boca Aviation mounted a series of legal challenges to the Authority's decision to lease the parcel to a third party. First, it sued the Authority in Florida state court, contending that the 19th Amendment required the Authority to develop the parcel itself, and that the Request for Proposals violated Boca Aviation's contractual rights under that amendment to the lease. In May 2000, the Florida court dismissed that claim, holding that the lease read as a whole permitted the Authority to assign its contractual rights to a third party. *Boca Airport, Inc. v. Boca Raton*

*Airport Auth.*, No. CL 00-00777 AE (Fla. Cir. Ct. 2000). That case is currently on appeal.

Second, in June 2000, Boca Aviation sued the Airport Authority in the United States District Court for the Southern District of Florida, alleging that the Authority's new plan for the parcel violated the Contracts Clause of the U.S. Constitution. Two weeks later, the court denied Boca's motion for a temporary injunction and entered final judgment for the Authority. *See Boca Raton Airport, Inc. v. Boca Raton Airport Auth.*, No. 00-8488-CIV, 2000 WL 963365 (S.D. Fla. June 25, 2000).

Finally, also in June 2000, Boca Aviation filed the Part 16 FAA complaint that gave rise to the present case. In that complaint, Boca Aviation alleged that the Authority's lease agreement with Premier Aviation violated a number of federal grant assurances including, in particular, Grant Assurance No. 1 ("General Federal Requirements"), which states:

> [The airport sponsor] will comply with all applicable Federal laws, regulations, . . . and requirements as they relate to the application, acceptance and use of Federal funds for this project including but not limited to . . . 14 C.F.R. Part 16 — Rules of Practice For Federally Assisted Airport Enforcement Proceedings.

Director's Determination, *Boca Airport, Inc. v. Boca Raton Airport Auth.*, FAA Docket No. 16-00-10, 2001 WL 438619, at *11 (FAA Apr. 26, 2001) [*Boca Aviation Director's Determination*]. Boca Aviation argued that the *Boca Jet Final Director's Determination* required the Authority to develop the remaining parcel itself, and that the Authority's lease with Premier violated *Boca Jet* and therefore Grant Assurance No. 1.

On April 26, 2001, Director Bennett rejected Boca Aviation's complaint, finding that:

> A plain reading of the [*Boca Jet* Initial] Director's Determination reveals that the FAA's sole purpose for requiring the Authority to submit a CAP was to ensure that the exclusive right granted to Boca Aviation . . . was in

fact extinguished. The Director's Determination neither specified the facilities to be constructed nor required the [Authority] itself to construct and operate facilities on the parcel.

*Boca Aviation Director's Determination*, at \*18. "Likewise," he continued,

> the [*Boca Jet*] Final Director's determination that accepted the Authority's CAP was limited to ensuring that the exclusive right was extinguished . . . . [T]he CAP did not require the [Authority] itself to construct or operate the facilities described in the 19th Amendment to Boca Aviation's lease. Rather, this Office accepted the [Authority's] proposal as one way to extinguish the exclusive right granted to Boca Aviation.

*Id.* at \*18-\*19. Finding that the lease with Premier was "consistent with the express intent of the [*Boca Jet*] Final Director's Determination and the Authority's continuing Federal obligations under the grant assurances," Director Bennett dismissed the complaint. *Id.* at \*19.

Boca Aviation appealed the *Boca Aviation Director's Determination* to the FAA's Associate Administrator for Airports. In its appeal, Boca Aviation contended that the Director had misread the *Boca Jet Final Director's Determination*. It insisted that *Boca Jet* had obligated the Authority itself to develop the parcel, as provided in the 19th Amendment.

The Associate Administrator, who issued the FAA's final decision in this matter, affirmed the Director's reading of *Boca Jet*. First, he noted that the same person, Director Bennett, had issued the determinations in both *Boca Jet* and *Boca Aviation*, and said that he doubted the Director had failed to "interpret the words in his own report correctly." Final Decision and Order, *Boca Airport, Inc. v. Boca Raton Airport Auth.*, FAA Docket No. 16-00-10, 2003 WL 1963859, at \*20 (FAA Mar. 20, 2003) [*Boca Aviation Final Decision*]. Second, the Associate Administrator's own reading of *Boca Jet* persuaded him that, although the decision "contemplated that the Authority would operate the aeronautical facilities on

the parcel," that was "not material to the decision." *Id.* Rather, "[w]hat was material to the Final Director's Determination in *Boca Jet* was that the Authority eliminate Boca Aviation's exclusive right." *Id.* at *21. The Administrator therefore affirmed the *Boca Aviation Director's Determination* and dismissed the appeal. *Id.* at *45.

## II

Boca Aviation now petitions for review of the *Boca Aviation Final Decision*. This court may overturn the FAA's factual findings only if they are not "supported by substantial evidence." 49 U.S.C. § 46110(c). We may overturn non-factual aspects of the FAA's decision only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see D&F Afonso Realty Trust v. Garvey*, 216 F.3d 1191, 1194 (D.C. Cir. 2000); *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993).

Boca Aviation's central argument is that the 19th Amendment required the Airport Authority to develop the parcel on its own, that the FAA "incorporated [the 19th Amendment's] critical terms into the *Boca Jet Final Director's Determination*," Petitioner's Br. at 35, and that the Authority's decision to lease the parcel to Premier Aviation was therefore a violation of Federal Grant Assurance No. 1, which provides that an airport sponsor "will comply with all applicable Federal . . . requirements . . . including but not limited to . . . Part 16 . . . Proceedings." The lynchpin of this argument is, of course, the claim that the determination in the *Boca Jet* Part 16 proceeding incorporated the provision of the 19th Amendment that required the Authority itself to develop the parcel. If *Boca Jet* did not do so, then the Authority's failure to comply with the provision did not constitute a failure to comply with the results of a Part 16 proceeding.[2]

_____

[2] Boca Aviation also attacks the FAA's Final Decision on the ground that it incorrectly asserted that 49 U.S.C. § 47107(a)(4) barred the Airport Authority from permitting Boca Aviation to develop the remaining parcel in the first place. But the Final

As noted above, Director Bennett — the same person who wrote the *Boca Jet Final Director's Determination* — disagreed with Boca Aviation's reading of that determination. "[T]he Final Director's Determination that accepted the Authority's CAP," he said, "was limited to ensuring that the exclusive right was extinguished.... [T]he CAP did not require the [Authority] itself to construct or operate the facilities described in the 19th Amendment to Boca Aviation's lease." *Boca Aviation Director's Determination*, at *18-*19. The FAA's Associate Administrator read *Boca Jet* the same way the Director did, concluding that *Boca Jet* "neither specified the facilities to be constructed nor required the Authority itself to construct and operate facilities on the parcel," and that "[w]hat was material to the Final Director's Determination in *Boca Jet* was that the Authority eliminate Boca Aviation's exclusive right." *Boca Aviation Final Decision*, at *21.

As we have repeatedly held, "[a]n agency's interpretation of its own precedent is entitled to deference." *Cassell v. FCC*, 154 F.3d 478, 483 (D.C. Cir. 1998).[3] The FAA's reading of *Boca Jet* is certainly a reasonable one. The Initial Director's Determination in that case declared that "the [Authority], by denying a lease to Boca Jet, and leasing the last remaining parcel of aviation land to Boca Aviation, is in noncompliance with the provisions regarding exclusive rights as set forth in 49 U.S.C. Section 47107(a)(4)." *Boca Jet Initial Director's Determination*, at *14. The Director therefore ordered the

---

Decision's statement on that point was merely a reference to *Boca Jet*, which so held, and the petitioner cannot collaterally attack that determination in this case. *See Boca Aviation Final Decision*, at *23 (discussing *Boca Jet Final Director's Determination*). More important, and as Boca Aviation acknowledges in its Reply Brief, the "question raised by this Petition for Review is not whether the 15th Amendment created an unlawful exclusive right, but rather whether FAA erred in not enforcing the terms of ... the 19th Amendment[ ] against the Authority." Reply Br. at 20.

[3] *Accord Entergy Servs., Inc. v. FERC*, 319 F.3d 536, 541 (D.C. Cir. 2003); *Global Crossing Telecomms., Inc. v. FCC*, 259 F.3d 740, 746 (D.C. Cir. 2001).

Authority to "present a plan for approval … on how it intends *to eliminate the continuation of an exclusive right* to Boca Aviation." *Id.* (emphasis added). After the Authority submitted the 19th Amendment, the *Boca Jet Final Director's Determination* explained exactly why it was approved: "The 19th [A]mendment was acceptable in that it served to require that Boca Aviation relinquish any and all rights in and to the [parcel]." *Boca Jet Final Director's Determination*, at \*2.

Nothing in the *Boca Jet Final Director's Determination* suggests that it made any difference to the FAA whether the Authority developed the parcel on its own or contracted with a third party. To the contrary, the Determination made clear that what mattered was that "the 19th [A]mendment will resolve the issue of the exclusive right as previously granted to Boca Aviation." *Id.* Indeed, as the Director subsequently noted, *Boca Jet* "specifically contemplated that the [Authority] may choose an alternative CAP" involving a lease to a third party, since *Boca Jet* contained a " 'request that the Authority seek guidance from the [FAA] on any future change in the use or operation of these facilities, *including any intent to lease the facilities to a commercial aeronautical service provider*.' " *Boca Aviation Director's Decision*, at \*19 (quoting *Boca Jet Final Director's Determination*, at \*2) (emphasis added).[4]

---

[4] Boca Aviation contends that this request referred only to a lease of "presumably already built" facilities, rather than to a lease permitting the building of facilities. Reply Br. at 7. The petitioner's reading is reasonable; but so, too, is the FAA's view that the language contemplated the kind of lease offered to Premier Aviation. The petitioner further contends that this request was included only because the FAA was concerned that the Authority might once again decide to lease the facilities to Boca Aviation. But that construction is plainly unreasonable, as the Director had already made it unmistakably clear that such a lease would violate 49 U.S.C. § 47107(a)(4) and render the Airport Authority ineligible for new FAA grants. *See Boca Jet Initial Director's Determination*, at \*14.

Boca Aviation places great weight on the fact that the *Boca Jet Final Director's Determination* described the course of the negotiations leading to the 19th Amendment, including proposed changes to the airport layout plan that provided for the "construction, development and operation by the Authority" of the disputed parcel. *Boca Jet Final Director's Determination*, at *2. But the cited passages are just that: a description of the background negotiations. By contrast, as the Director noted in his determination in *Boca Aviation*, the *Boca Jet Final Director's Determination* made clear that the FAA regarded the 19th Amendment as "acceptable *in that it served to require that Boca Aviation relinquish any and all rights* in and to the [parcel]." *Boca Aviation Director's Determination*, at *18 (quoting *Boca Jet Final Director's Determination*, at *2) (emphasis added). That language neither states nor suggests that the provision requiring the Authority to develop the property was relevant to its acceptability.

Boca Aviation further contends that entering into the 19th Amendment, which extinguished its exclusive lease, would have been irrational had it not expected that it would have a federal forum in which to enforce the Airport Authority's promise to develop the parcel. The petitioner offers no reason why it would have been irrational for it to rely on the Florida state courts — rather than the FAA — to provide a forum for enforcement of the contractual obligations created by the lease amendment.[5] But whether Boca Aviation acted rationally or irrationally is beside the point. As the FAA

---

[5] Nor is it clear that it would have been irrational for Boca Aviation to give up its exclusive rights even if it had received no concession in return. As the preamble to the 19th Amendment explained, the "Lessor and Lessee have determined that it would be in the best interests of the Airport, the public and its users to terminate" Boca Aviation's lease "so as to cause the reinstatement of FDOT funding and resolution of the pending Part 16 Action." J.A. 376. Insisting on its exclusive lease could well have been self-defeating for Boca Aviation, as it would have led to a cut-off of federal funds that would likely have injured Boca Aviation as well as the airport.

found, the sole "intent of the Director's Determination in the *Boca Jet* case was to eliminate an exclusive rights violation at the airport." *Boca Aviation Final Decision*, at *24. Hence, "[w]hether the option exercised by the Authority in following through on its plan to develop the 15 acres violated a specific issue of contract law between [Boca Aviation] and the [Authority] is a matter for a state court to decide; a Part 16 complaint is not the right forum to resolve that issue." *Id.*

The petitioner protests that this conclusion is inconsistent with a number of cases in which agencies have enforced agreements like that made by the Authority here. One such case is *City of Pompano Beach v. FAA*, 774 F.2d 1529 (11th Cir. 1985), in which the FAA enforced a Part 16 stipulation requiring the City to offer the complainant its "standard fixed base operator lease." 774 F.2d at 1537. *Pompano Beach* does not, however, advance the petitioner's cause. There, the FAA enforced the stipulation because the City's refusal to offer the complainant its standard lease was "unjustly discriminatory," and had "the effect of granting [an] exclusive right to the use" of the City's airpark, in violation of 49 U.S.C. app. § 1349(a) (1982). *Id.* at 1538. The Boca Raton Airport Authority's decision to lease the remaining airport parcel to Premier Aviation, by comparison, violates no statutory provision.

Boca Aviation also cites *Conant v. Office of Personnel Management*, 255 F.3d 1371 (Fed. Cir. 2001), for the proposition that "[w]here a settlement agreement between the parties is relevant to an administrative proceeding, directly addresses an issue in dispute, and is not contrary to law, an administrative agency cannot choose to ignore the agreement." 255 F.3d at 1377. But both parties in *Conant* (one of which was a government agency) expressly intended that their settlement agreement would govern future administrative proceedings in that case. *Id.* at 1376-77. There was no such agreement here; to the contrary, the FAA found that the development provision pressed by Boca Aviation was immaterial to the agency proceedings.[6]

---

[6] Two other cases cited by the petitioner, *Texas Eastern Transmission Corp. v. FERC*, 966 F.2d 1506 (D.C. Cir. 1992), and *Cajun*

In sum, there was nothing arbitrary, capricious, or otherwise unlawful in the FAA's conclusion that the Airport Authority's lease with Premier Aviation was in compliance with federal requirements, including the decision in *Boca Jet*.

## III

The 19th Amendment notwithstanding, we hold that Boca Aviation has no federally enforceable right to compel the Boca Raton Airport Authority to construct, develop, and operate the last remaining parcel of land at the Airport. If relief is to be had at all, Boca Aviation must continue to pursue it in state court. The petition for review is therefore

*Denied.*

---

*Electric Power Cooperative, Inc. v. FERC*, 924 F.2d 1132 (D.C. Cir. 1991), are even less relevant to the issues on review here. Those cases merely observed that a court should defer to an agency's interpretation of a private settlement agreement approved by the agency. They did not hold that the agency was required to enforce all of the terms of such an agreement. *See Texas Eastern*, 966 F.2d at 1509; *Cajun Electric*, 924 F.2d at 1135.