**F I L E D**

PUBLISH

**August 8, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT W. NEWTON,

　　　　　Petitioner,

v.

FEDERAL AVIATION
ADMINISTRATION,

　　　　　Respondent.

No. 05-9548

---

**PETITION FOR REVIEW OF AN ORDER OF
THE NATIONAL TRANSPORTATION BOARD
(NTSB NO. NA-51)**

---

D. Scott Crook, (R. Christopher Preston, on the brief), Smith Hartvigsen, PLLC, Salt Lake City, Utah, for Petitioner.

Susan S. Caron, Attorney (Peter J. Lynch, Assistant Chief Counsel, on the brief), Enforcement Division, AGC-300, Federal Aviation Administration, Washington, DC, for Respondent.

---

Before **KELLY**, **SEYMOUR**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

　　　This case arises under the Federal Aviation Act, 49 U.S.C. § 40101 et seq.

(as amended).　Robert Newton petitions for our review of an order of the National

Transportation Safety Board (NTSB) determining that it lacked jurisdiction to review the decision of the Utah Air National Guard (ANG) to withdraw permanently Mr. Newton's air-traffic-control-specialist (ATCS) certificate. We have jurisdiction under 49 U.S.C. §§ 1153, 44709(f), 46110(a), to review the NTSB's order. We affirm.

## I.    BACKGROUND

Mr. Newton became an air traffic controller[1] in 1968, when the Federal Aviation Administration (FAA) issued his first ATCS certificate. This certificate authorizes the bearer to perform specified air-traffic-control duties at a designated facility. He worked for the FAA at civilian air-traffic-control facilities in Idaho and Utah until 1981. In 1985 he became certified to work as a controller at Hill Air Force Base, and obtained a part-time position with the 299th Range Control Squadron of the Utah ANG. In 1988 he was employed full-time as a civilian air

---

[1]    *Air traffic controller* is defined by statute as

a civilian employee of the Department of Transportation or the Department of Defense who, in an air traffic control facility or flight service station facility—
        (A) is actively engaged—
                (i) in the separation and control of air traffic; or
                (ii) in providing preflight, inflight, or airport advisory service to aircraft operators; or
        (B) is the immediate supervisor of any employee described in subparagraph (A) . . . .

5 U.S.C. § 2109(1).

traffic controller working for the Department of Defense at Hill. In 1993 his ATCS certificate was reissued, apparently only because there was no room for additional certifications and ratings on his old one.

On December 7, 2003, the Utah ANG suspended Mr. Newton's ATCS certificate and restricted him from performing air-traffic-control duties because "[i]t has been determined that [he is] a hazard to aviation safety for repeated failure in performing the duties of an Air Traffic Control Supervisor." R. at 6. His ATCS certificate was permanently withdrawn by the ANG on February 24, 2004, and he was therefore "not authorized to perform any function related to ATC in the Air National Guard or USAF." *Id.* at 1. Mr. Newton appealed the withdrawal of the ATCS certificate to the NTSB under 49 U.S.C. § 1133(1), which permits the NTSB to review on appeal "the denial, amendment, modification, suspension, or revocation of a certificate issued by the Secretary of Transportation under section 44703, 44709, or 44710 of [Title 49]." The timing and other procedural requirements for an appeal to the NTSB are governed by 49 C.F.R. §§ 821.30, 821.53.

On June 14, 2004, an NTSB Administrative Law Judge (ALJ) issued an "Order Not Accepting Appeal and Terminating Proceeding for Lack of Jurisdiction." R. at 700. The ALJ observed that the NTSB's statutory jurisdiction to review certificate actions encompasses only orders of the FAA respecting

certificates issued under 49 U.S.C. chapter 447. The ALJ decided that the ATCS certificate was not such a certificate. He rejected Mr. Newton's arguments that (1) his ATCS certificate was an "airman certificate" under 49 U.S.C. §§ 44702(a), 44703, and (2) even if it was not an airman certificate, it was nonetheless a certificate issued under chapter 447. Mr. Newton appealed the ALJ's decision to the Board. Rejecting Mr. Newton's arguments relying on FAA Order 7220.1A, a handbook entitled, "Certification and Rating Procedures," the NTSB affirmed the jurisdictional conclusions of the ALJ and denied the appeal.

## II.   STANDARD OF REVIEW

We review the NTSB's factual findings to determine whether they are supported by "substantial evidence." 49 U.S.C. §§ 1153(b)(3), 44709(f). In other respects the scope of our review is governed by 5 U.S.C. § 706 of the Administrative Procedures Act (APA). *See* 5 U.S.C. § 701; *Jifry v. Fed. Aviation Admin.*, 370 F.3d 1174, 1180-81 (D.C. Cir. 2004) (applying APA review to pilots' challenge to the revocation of their airman certificates); *cf. Boca Airport, Inc. v. Fed. Aviation Admin.*, 389 F.3d 185, 189 (D.C. Cir. 2004) (applying APA to extent that 49 U.S.C. § 46110 does not govern standard of review). Under the APA we "may overturn nonfactual aspects of the . . . decision only if they are 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.'" *Boca Airport, Inc.*, 389 F.3d at 189 (quoting 5 U.S.C. § 706(2)(A)). In

particular, we have held that we review issues of law, such as matters of statutory interpretation, de novo. *See Bennett v. Nat'l Transp. Safety Bd.*, 66 F.3d 1130, 1136 (10th Cir. 1995); *see also* 5 U.S.C. § 706*; Kratt v. Garvey*, 342 F.3d 475, 480 (6th Cir. 2003) (de novo review of issues of law on appeal from NTSB).

Under the line of cases following *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-43 (1984), we ordinarily defer to an agency's interpretation of an ambiguous statute that it implements. *See McGraw v. Barnhart*, 450 F.3d 493, 500 (10th Cir. 2006); *see also Donnelly v. Fed. Aviation Admin.*, 411 F.3d 267, 271 (D.C. Cir. 2005) (applying *Chevron* to an FAA statutory interpretation). There are three agency pronouncements relevant to this case: (1) the NTSB's adjudication of Mr. Newton's appeal; (2) FAA regulations governing airman certificates; and (3) the FAA handbook, FAA Order 7220.1A, which establishes ATCS certificates and contrasts them with airman certificates.

Different types of agency pronouncements are entitled to different degrees of deference. In *United States v. Mead*, 533 U.S. 218, 226-27 (2001), the Supreme Court held:

> [A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority. Delegation of such authority may be shown in a variety of ways, as by an agency's power

> to engage in adjudication or notice-and-comment rulemaking, or by
> some other indication of a comparable congressional intent.

Under this holding the NTSB's adjudication would appear to qualify for *Chevron* deference, although the extent to which such deference should be accorded an agency's interpretation of its own jurisdictional statute has been a matter of dispute. *Compare, e.g., McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conf. of the U.S.*, 264 F.3d 52, 62 (D.C. Cir. 2001) (applying *Chevron* deference to agency's interpretation); *Fleischmann v. Dir., Office of Workers' Comp. Programs*, 137 F.3d 131, 136 & n.2 (2d Cir. 1998) (same); *with, e.g., N. Ill. Steel Supply Co. v. Sec. of Labor*, 294 F.3d 844, 846-47 (7th Cir. 2002) (*Chevron* deference is not applicable to an agency's jurisdictional determination); *Bolton v. Merit Sys. Prot. Bd.*, 154 F.3d 1313, 1316 (Fed. Cir. 1998) (same). *See generally* Cass R. Sunstein, *Chevron Step Zero*, 92 Va. L. Rev. 187, 234-36 (2006). As for the FAA's regulations, they are clearly entitled to *Chevron* deference. *See Toomer v. City Cab*, 443 F.3d 1191, 1196 (10th Cir. 2006) (regulations promulgated by an agency in exercising congressionally granted rulemaking authority are entitled to deference under *Chevron*). The FAA handbook, in contrast, was not issued as a regulation. Nevertheless, insofar as the handbook is interpreting the provisions of the Federal Aviation Act governing air traffic controllers, it is entitled to deference to the extent that it is persuasive, *see McGraw*, 450 F.3d at 501; *Friends of Richards-Gebaur Airport v. Fed. Aviation*

*Admin.*, 251 F.3d 1178, 1195 (8th Cir. 2001); and it is entitled to great deference insofar as it is interpreting the agency's own regulations, *see Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Archuleta v. Wal-Mart Stores, Inc. (In re Wal-Mart Stores, Inc.)*, 395 F.3d 1177, 1184-85 (10th Cir. 2005)**.** *See Humanoids Group v. Rogan*, 375 F.3d 301, 306 (4th Cir. 2004) ("[A]gency interpretations that lack the force of law (such as those embodied in opinion letters and policy statements) do not warrant *Chevron*-style deference when they interpret ambiguous *statutes* but do receive deference under *Auer* when interpreting ambiguous *regulations*." (internal quotation marks omitted)). Should we encounter an inconsistency between the interpretation of the NTSB and that of the FAA, we would likely give greater deference to the FAA as the primary agency overseeing the certification provisions of the Federal Aviation Act. *See Olson v. Fed. Mine Safety & Health Review Comm.*, 381 F.3d 1007, 1011 (10th Cir. 2004) (addressing possibility of conflict between interpretations by (1) Federal Mine Safety and Health Review Commission and (2) Mine Safety and Health Administration). In the following discussion we have no quarrel with any relevant pronouncements of the NTSB or the FAA. To the extent that we should accord deference to such pronouncements, our conclusions are only strengthened.

III. **ANALYSIS**

The NTSB's jurisdiction in this case is determined by 49 U.S.C. § 1133, which states in relevant part:

> The National Transportation Safety Board shall review on appeal—
> (1) the denial, amendment, modification, suspension, or revocation of a certificate issued by the Secretary of Transportation under section 44703, 44709, or 44710 of this title . . . .

Section 44703 governs the FAA's issuance of "airman" certificates and specifically provides for an NTSB appeal by "[a]n individual whose application for the issuance or renewal of an airman certificate has been denied" by the FAA. *Id.* § 44703(c). Section 44709 governs orders by the FAA Administrator "amending, modifying, suspending, or revoking . . . any part of a certificate issued under this chapter," *id.* § 44709(b)(1), and provides that "[a] person adversely affected by an order of the Administrator under this section may appeal the order to the National Transportation Safety Board," *id.* § 44709(d)(1). Section 44710 relates to the revocation of airman certificates for substance-abuse violations.

A first reading of § 1133(1) may suggest that the NTSB's authority extends only to actions with respect to "a certificate issued by the Secretary of Transportation under section 44703, 44709, or 44710"; but since no certificates are issued under the latter two sections, it is clear that "under section 44703, 44709, or 44710" does not modify the term *certificate issued by the Secretary of*

-8-

*Transportation*, which immediately precedes the prepositional phrase. Rather, the phrase must modify "denial, amendment, modification, suspension or revocation." In other words, § 1133(1) provides the NTSB with appellate authority over the Administrator's actions taken under §§ 44703, 44709, or 44710 with respect to certificates issued by the Secretary of Transportation. Mr. Newton contends that the revocation of his ATCS certificate was a revocation by the Administrator under § 44709.

The question before us, then, is whether the revocation of the ATCS certificate was (1) an order by the Administrator (2) "revoking . . . a certificate issued under [chapter 447 of Title 49]." 49 U.S.C. § 44709(b). On appeal Mr. Newton raises the same arguments he presented to the NTSB. His first two arguments relate to the nature of the ATCS certificate. First, he argues that "the revocation of Mr. Newton's ATCS certificate was a revocation of an airman certificate issued under 49 U.S.C. § 44703." Aplt Br. at 13. In the alternative, he argues that even if his certificate is not an airman certificate, it is nonetheless a "certificate issued under [chapter 447]." 49 U.S.C. § 44709(b)(1). His third argument relates to the identity of the entity that took the adverse action against him. He contends that the ANG's suspension and withdrawal of his ATCS certificate was in essence a revocation by the FAA Administrator (so the action comes within the scope of § 44709), because the ANG was acting as the

Administrator's agent. But we need not address this point, because we reject

Mr. Newton's other two arguments. We discuss those two arguments in turn.

## A.    Airman Certificates

Under chapter 447 of Title 49, the FAA Administrator "may issue airman certificates, type certificates, production certificates, airworthiness certificates, air carrier operating certificates, airport operating certificates, air agency certificates, and air navigation facility certificates." 49 U.S.C. § 44702(a). The Administrator "shall issue an airman certificate to an individual when the Administrator finds, after investigation, that the individual is qualified for, and physically able to perform the duties related to, the position to be authorized by the certificate." *Id.* § 44703(a). Once such a certificate has been issued, the Administrator may issue an order "amending, modifying, suspending or revoking" it. *Id.* § 44709(b)(1). Such an order is appealable to the NTSB. *Id.* § 44709(d)(1); 49 C.F.R. §§ 821.1-64; *see King v. Nat'l Transp. Safety Bd.*, 362 F.3d 439, 441-42 (8th Cir. 2004) (noting the procedure, including review in a federal appellate court, for appealing an FAA certificate action).

Mr. Newton contends that his ATCS certificate is an airman certificate issued under §§ 44702(a) and 44703. *Airman* is defined by statute as:

> an individual—
> (A) in command, or as pilot, mechanic, or member of the crew, who navigates aircraft when under way;

(B) except to the extent the Administrator of the Federal Aviation Administration may provide otherwise for individuals employed outside the United States, who is directly in charge of inspecting, maintaining, overhauling, or repairing aircraft, aircraft engines, propellers, or appliances; or

(C) who serves as an aircraft dispatcher or *air traffic control-tower operator*.

49 U.S.C. § 40102(a)(8) (emphasis added). Although acknowledging that "thousands of air traffic controllers are employed by the FAA in facilities other than air traffic control towers," Aplt Br. at 14, Mr. Newton claims that his ATCS certificate is for an "air traffic control-tower operator." We disagree.

We think it elementary that a certification as an "air traffic control-tower operator" must be an authorization to operate an air traffic control tower, or at least to work at one. Yet Mr. Newton does not argue that he has worked at one or that his ATCS certificate authorized him to work at one. Therefore, we do not see how his ATCS certificate could be considered an airman certificate for an air traffic control-tower operator. Moreover, if we had doubts on that score we would accord some level of deference to the FAA Administrator's view of the matter, *see McGraw*, 450 F.3d at 500-01 (agency's informal interpretation of statute can be persuasive); *Archuleta*, 395 F.3d at 1184 (agency's interpretation of ambiguities in its own regulations is entitled to great weight); and it is clear that the Administrator considers and treats ATCS certificates as distinct from airman certificates.

-11-

The term *air traffic control-tower operator* is not defined by statute, but the FAA has issued implementing regulations for airman certificates within this category. *See* 14 C.F.R. §§ 65.31-65.50. These regulations discuss the issuance of certificates for air traffic control-tower operators (CTO certificates) and mandate that "[n]o person may act as an air traffic control tower operator at an air traffic control tower in connection with civil aircraft unless he . . . [h]olds an air traffic control tower operator certificate issued to him under this subpart." *Id.* § 65.31(a). The regulation does not mention ATCS certificates.

The program for issuance of ATCS certificates is administered under FAA Order 7220.1A, a handbook entitled, "Certification and Rating Procedures," published on August 18, 1976. The first paragraph of the handbook describes its scope: "This handbook specifies uniform procedures for the certification and rating of all air traffic controllers operating in the national airspace system. These procedures apply to all FAA, DOD civilian and military, and civilian nonfederal personnel engaged in air traffic control activities." R. at 267 ¶ 1(a) (FAA Order 7220.1A).

Mr. Newton contends that this handbook supports his view that ATCS certificates are airman certificates for control-tower operators. In our view, however, it does the opposite. The handbook repeatedly states that an ATCS certificate is distinct from a CTO certificate. The second paragraph of the

handbook explicitly differentiates between CTO certificates and ATCS

certificates. It states: "This handbook provides for the issuance of control tower

operator (CTO) certificates to all air traffic controllers who serve as control tower

operators. All other persons serving as air traffic controllers will be issued air

traffic control specialist (ATCS) certificates." *Id.* at 267 ¶ 1(b). Further

emphasizing the distinction between CTO and ATCS certificates, the

"Introduction" paragraph of the handbook states:

> Under the Federal Aviation Act of 1958 (FA Act), an air traffic
> control tower operator is included within the definition of "Airman."
> Section 610 of the Act makes it unlawful for any person to serve as
> an airman in connection with any civil aircraft in air commerce
> without an appropriate airman certificate. The Act authorizes the
> issuance of airmen certificates, specifying the capacity in which the
> holders are authorized to serve. *Persons operating in control towers
> are required* by Part 65 of the Federal Aviation Regulations (FAR) *to
> possess a Control Tower Operator* (CTO) *certificate* and an
> appropriate facility rating, or be qualified for the operating position
> at which they act and under the supervision of a holder of a facility
> rating for that control tower. *Other persons whose responsibilities
> and duties involve the operational handling of instrument flight rule
> (IFR) traffic shall possess a valid FAA Air Traffic Control Specialist
> certificate with the appropriate facility rating.* This handbook
> provides procedures for the administration of the air traffic controller
> certification program.

*Id.* at 272 ¶ 1 (emphasis added).

Mr. Newton creatively asserts that this Introduction "conclusively

establishes that the FAA believes that ATCS certificates are airman certificates."

Aplt Br. at 16. Despite the paragraph's stating that "[p]ersons operating in

-13-

control towers" must have CTO certificates and "[o]ther persons" must have ATCS certificates, he argues:

> The introductory paragraph of the FAA Order specifically cites the statute which prohibits air traffic control tower operators from acting in that capacity without an airman certificate and authorizes the FAA to issue airman certificates. It then identifies one such certificate for "[p]ersons operating in control towers." It subsequently identified another certificate for all other "persons whose responsibilities and duties involve the operational handling of [IFR] traffic." This language indicates that the FAA believed it was acting pursuant to its § 44703 authority to issue airman certificates when it created the air traffic control specialist certificates and that such certificates are airman certificates. Accordingly, it is more than fair to say that FAA Order 7220.1A substantively defined the term "air traffic control tower operator" to include two classes of air traffic controllers: (1) air traffic controllers providing air traffic control in control towers and (2) air traffic controllers providing air traffic control from any other air traffic control facility.

*Id*. at 16-17 (footnote omitted).

We are unable to make the mental leap in Mr. Newton's final sentence. He is suggesting that the FAA reads the word "tower" out of the term "air traffic control tower operator" so that the term includes "air traffic controllers providing air traffic control from any . . . air traffic control facility" other than a control tower. One would hope that if the FAA were intending such a distortion of the English language, it would be explicit about it. We simply cannot read the paragraph quoted from the handbook as suggesting in any way that the FAA views ATCS certificates as being authorized under the statutory provision for airman certificates.

-14-

The definitions in the handbook confirm this observation. *ATCS certificate* is defined as "a certificate issued by appropriate FAA or military authority authorizing the holder to act as an air traffic control specialist in accordance with the provisions of this handbook. *This certificate cannot be used in lieu of Airman Certificate* (AC Form 8060-1 [apparently the form for an airman certificate]) *by control tower operators*." R. at 273 ¶ 3(d) (emphasis added). In other words, an ATCS certificate is *not* an airman certificate. On the other hand, *CTO certificate* is defined as "[a] certificate issued by the FAA authorizing the holder to act as an AIRMAN in connection with Part 65 of the Federal Aviation Regulations." *Id.* at 273 ¶ 3(h); *see also id.* at 267 ¶ 5(a) ("[This order] [p]rovides for issuance of CTO certificate and rating to control tower operators and the ATCS certificate and rating to all others engaged in air traffic control activities whether military or FAA. In some cases this will require that a specialist hold both certificates."). This contrast between the two definitions makes clear that the CTO certificate, and not the ATCS certificate, is an airman certificate.

Moreover, the form of an ATCS certificate does not conform to the statutory requirements for an airman certificate. The statute prescribes:

> An airman certificate shall—
> (A) be numbered and recorded by the Administrator of the Federal Aviation Administration;
> (B) contain the name, address, and description of the individual to whom the certificate is issued;

(C) contain terms the Administrator decides are necessary to ensure safety in air commerce, including terms on the duration of the certificate, periodic or special examinations, and tests of physical fitness;

(D) specify the capacity in which the holder of the certificate may serve as an airman with respect to an aircraft; and

(E) designate the class the certificate covers.

49 U.S.C. § 44703(b)(1). But the form for the ATCS certificate (which Mr. Newton's certificate follows) states only: "This certifies that [insert name] has been found to be properly qualified to perform the duties of air traffic control specialist within areas specified in the suitably endorsed Rating Record on the reverse side hereof." R. at 308. The Rating Record on the reverse side of an ATCS certificate includes space for several "Area" and "Rating" qualifications to be inserted by a "Certifying Official." (Mr. Newton's, for example, lists that he was qualified to work at Hill Air Force Base's "Clover" "ARTCC" facility. ("ARTCC" is the acronym for Air Route Traffic Control Center.)) An ATCS certificate is not individually numbered, nor is it recorded by the FAA as required by § 44703(b)(1)(A). Similarly, the FAA regulations governing CTO certificates require a written test, *see* 14 C.F.R. § 65.35, but no such test is imposed for an ATCS certificate.

Although Mr. Newton asserts that such deficiencies in the form and recording of his certificate "do[] not alter the statutory basis for issuing the certificates," Aplt Reply Br. at 12, these are not mere technicalities. The ATCS

certificate is not the substantial equivalent of an airman certificate. We think it undeniable that ATCS certificates are neither intended nor understood by the FAA to be airman certificates.

**B.      Other Certificates Issued Under Chapter 447**

49 U.S.C. § 44709(b) states:

> Actions of the Administrator.—The Administrator may issue an order amending, modifying, suspending, or revoking—
> (1) *any part of a certificate issued under this chapter* if—
>     (A) the Administrator decides after conducting a reinspection, reexamination, or other investigation that safety in air commerce or air transportation and the public interest require that action; or
>     (B) the holder of the certificate has violated an aircraft noise or sonic boom standard or regulation prescribed under section 44715(a) of this title . . . .

(emphasis added). Mr. Newton's second argument for NTSB jurisdiction is that even if his certificate is not an airman certificate issued under § 44703, it was nonetheless issued under chapter 447 of Title 49, making its revocation a revocation under § 44709(b)(1), and therefore reviewable by the NTSB under §§ 44709(d) and 1133(1). We affirm the NTSB's determination that Mr. Newton's ATCS certificate is not a "certificate issued under this chapter" within the meaning of that language in § 44709(b)(1), although our reasoning is somewhat different from the Board's.

Mr. Newton's argument rests on two contentions. First, he contends that the list of specific types of aviation-related certificates, including airman

-17-

certificates, enumerated in § 44702 is not exclusive and that the FAA has residual authority under chapter 447 to issue other types of certificates, including ATCS certificates, as the Administrator sees fit. Second, he contends that any such nonenumerated certificates issued by the FAA would fall within § 44709's grant of NTSB jurisdiction to review orders revoking "certificates issued under this chapter."

His first contention may be correct. Section 44701(a)(5) grants the Administrator the authority to "promote safe flight of civil aircraft in air commerce by prescribing . . . regulations and minimum standards for other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security." This language may well be sufficiently broad to encompass authority for the creation of the ATCS-certificate program. We need not resolve that point, however, because Congress expressly and authoritatively stated its intent that the only certificates addressed by § 44709(b)(1) are those that are statutorily enumerated.

Title 49 was restructured in 1994. The predecessor to § 44709(b)(1) and (d) (and other provisions of present law) stated:

> [T]he Secretary of Transportation may issue an order amending, modifying, suspending, or revoking, in whole or in part, any type certificate, production certificate, airworthiness certificate, airman certificate, air carrier operating certificate, air navigation facility certificate (including airport operating certificate), or air agency certificate. . . . Any person whose certificate is affected by such an

order of the Secretary of Transportation under this section may appeal the Secretary of Transportation's order to the National Transportation Safety Board . . . .

49 U.S.C. § 1429(a) (1993).[2]  Clearly, under the predecessor to §§ 44709(b)(1) the only certificates that the Administrator could "amend[], modify[], suspend[], or revok[e]," were type certificates, production certificates, airworthiness certificates, airman certificates, air carrier operating certificates, air navigation facility certificates, airport operating certificates, and air agency certificates (each of which was authorized by a specific statutory provision).

When the first part of § 1429(a) was recodified as § 44709(b)(1), however, the enumerated list of certificate types was replaced by the current language: "certificates issued under this chapter." *See* Pub. L. 103-272, 108 Stat. 745, 1190 (1994).  One might read this change in the language to mean that the Administrator could now enter orders respecting *any* FAA-authorized certificate, not just those enumerated in § 44702(a).  But that reading is foreclosed by the statutory purpose stated in the title to the revision:  "An Act to revise, codify, and enact *without substantive change* certain general and permanent laws, related to

---

  [2]  Also, former § 1903(a)(9) (1993), the predecessor to § 1133(1), provided NTSB jurisdiction to "review on appeal . . . the suspension, amendment, modification, revocation, or denial of any operating certificate or license issued by the Secretary of Transportation under sections 1422, 1429, or 1431[(e)] of this title . . . ."  (Section 1422 related to the issuance of airman certificates and § 1431(e) covered certificate actions related to noise pollution (now codified at § 44709(b)(1)(B)).)

transportation, . . . and to make other technical improvements in the Code." *Id.* at 745 (emphasis added). Although ordinarily the title is merely an aid to construction, which must yield to unambiguous statutory language, *see State of Oklahoma v. United States Civil Service Comm'n.*, 153 F.2d 280, 283 (10th Cir. 1946), we should not close our eyes to the likelihood that a Member of Congress reading the title of the 1994 statute would likely find it unnecessary to read further, realizing that the statute is not changing the law. Indeed, "[u]nder established canons of statutory construction, it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed." *Fenley v. United States*, 490 U.S. 545, 554 (1989) (internal quotation marks omitted). "This is true, even though in the course of revision or consolidation the language of the original sections has been changed. Ordinarily, the new language will be attributed to a desire to condense and simplify the text and to improve phraseology." *Ruth v. Eagle-Picher Co.*, 225 F.2d 572, 575 (10th Cir. 1955). Confirming this presumption, the House Report states: "In subsection (b)(1) [of § 44709], before subclause (A), the words 'certificate issued under this chapter' are substituted for 'type certificate, production certificate, airworthiness certificate, airman certificate, air carrier operating certificate, air navigation facility certificate (including airport operating

certificate), or air agency certificate' to eliminate unnecessary words." H.R. Rep. 103-180, at 348 (1993), *reprinted in* 1994 U.S.C.C.A.N. 818, 1165.

Thus, the language "certificates issued under this chapter" in § 44709(b) refers only to certificates specifically mentioned in chapter 447. In the course of exercising its responsibilities under that chapter the FAA may issue other documents. But whether it titles these documents "certificates," "licenses," "credentials," or whatever, does not affect the NTSB's jurisdiction under 49 U.S.C. § 1133(1). (What if the FAA gave a valued employee a "certificate of appreciation"?) We agree with the NTSB's conclusion that Mr. Newton's ATCS certificate is not a "certificate issued under [chapter 447]," within the meaning of § 44709. Therefore, we have the same view as the NTSB on the question of its jurisdiction over this matter.

## IV. CONCLUSION

Because Mr. Newton's ATCS certificate is not an airman certificate and does not otherwise constitute a certificate issued under chapter 447, we AFFIRM the NTSB's conclusion that it lacks jurisdiction to review the ANG's action.