**F I L E D**

PUBLISH

**April 4, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BARBARA TOOMER, an individual;
DISABLED RIGHTS ACTION
COMMITTEE, a Utah nonprofit
corporation,

      Plaintiffs - Appellants,

v.

CITY CAB, a Utah corporation; UTE
CAB, a Utah corporation; YELLOW
CAB DRIVERS ASSOCIATION, a
Utah corporation,

      Defendants - Appellees.

No. 05-4091

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 04-CV-397-DAK)**

---

Richard F. Armknecht, III, Armknecht & Cowdell, P.C., Lindon, Utah, for
Plaintiffs - Appellants.

Donald J. Winder (and John W. Holt, with him on the brief), Winder & Haslam,
P.C, Salt Lake City, Utah, for Defendants - Appellees.

---

Before **KELLY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**KELLY**, Circuit Judge.

Plaintiffs-Appellants Barbara Toomer and the Disabled Rights Action Committee (collectively, "DRAC") appeal from the district court's grant of summary judgment in favor of Defendants-Appellees City Cab Company, Inc., Ute Cab Company, Inc., and Yellow Cab Drivers Association Inc. (collectively, "Cab Companies"), arising from DRAC's claim that the Cab Companies operated in violation of Title III of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189. DRAC sought to require the Cab Companies to provide service to powered wheelchair users, contending that the Cab Companies were using new vehicles that were required to be ADA compliant. The district court concluded there was no ADA violation because the term "new vehicle" meant vehicles with no prior use, not, as DRAC contended, vehicles manufactured after the effective date of the ADA. Toomer v. City Cab Co., 2005 WL 67091 (D. Utah Jan. 10, 2005). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

Background

The relevant facts are essentially undisputed. On May 3, 2004, DRAC filed its complaint in federal district court against the Cab Companies. Aplt. App. at 7. DRAC sought an injunction for violation of Title III of the ADA and damages for nuisance. Id. at 16, 18. The district court dismissed the nuisance claim and upon subsequent summary judgment motion by the Cab Companies, Aplee. Supp. App.

at 1-8, dismissed the ADA claim.  Aplt. App. at 84-89.  DRAC moved for reconsideration, id. at 90-91, which the district court denied, id. at 99-104.  This appeal followed.

## Discussion

*A. Statutory Language at Issue*

The ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce.

42 U.S.C. § 12184(a).  There is no dispute that the Cab Companies are subject to this provision.  The ADA defines "discrimination" as including:

> the purchase or lease by such entity of a new vehicle (other than an automobile, a van with a seating capacity of less than 8 passengers, including the driver, or an over-the-road bus) . . . that is not readily accessible to and usable by individuals with disabilities . . .

42 U.S.C. § 12184(b)(3).  Discrimination also includes:

> the purchase or lease by such entity of a new van with a seating capacity of less than 8 passengers, including the driver, which is to be used to provide specified public transportation and for which a solicitation is made after the 30th day following the effective date of this section that is not readily accessible to and usable by such individuals . . . .

42 U.S.C. § 12184(b)(5).

Here, DRAC argues that the word "new" means a vehicle manufactured after the effective date of the ADA. Aplt. Br. at 29; see also Pub. L. No. 101-336 § 310 (effective dates of Title III). The Cab Companies argue that "new" means "not previously used." The Cab Companies operate vehicles and/or vans that seat eight or more passengers that have been previously used, Aplee. Supp. App. at 4-5; at least some of the cab companies operate vans (seating capacity unknown) that were manufactured after the effective date of the ADA. Aplt. App. at 41-42.

B. *Standard of Review*

We review the grant of summary judgment de novo and apply the same legal standard used by the district court. Pippin v. Burlington Res. Oil And Gas Co., —F.3d—, 2006 WL 337586, *3 (10th Cir. Feb. 14, 2006). Summary judgment is proper if the evidence, viewed in the light most favorable to the non-moving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. The construction and applicability of a federal statute is a question of law reviewed de novo. Robbins v. Chronister, —F.3d—, 2006 WL 172357 (10th Cir. Jan. 25, 2006); Foutz v. United States, 72 F.3d 802, 804 (10th Cir. 1995) (the construction of federal statutes is a question of law).

C. *Analysis*

The core issue in this case is the meaning of the term "new" as used in 42 U.S.C. § 12184(b). The statute provides no specific definition of "new" within the ADA. See 42 U.S.C. § 12102.

When construing a statute, we should give effect, if possible, to every clause and word. Chickasaw Nation v. United States, 534 U.S. 84 (2001) (citing United States v. Menasche, 348 U.S. 528, 538-539 (1955)); see also Hain v. Mullin, —F.3d—, 2006 WL 158892, *1 (10th Cir. Jan. 23, 2006) (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)). We must construe the words of the statute in their ordinary, everyday sense. Smith v. United States, 508 U.S. 223, 228-29 (1993); Malat v. Riddell, 383 U.S. 569, 572 (1966); see also Harbert v. Healthcare Servs. Group, Inc., 391 F.3d 1140, 1148 (10th Cir. 2004). If the terms of the statute are clear and unambiguous, the inquiry ends and we simply give effect to the plain language of the statute. Sullivan v. Stroop, 496 U.S. 478, 482 (1990); see also Anderson v. United States Dep't of Labor, 422 F.3d 1155, 1177 (10th Cir. 2005); Edwards v. Valdez, 789 F.2d 1477, 1481 (10th Cir. 1986). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Anderson, 422 F.3d at 1177.

Here, both DRAC and the Cab Companies begin by arguing that the word "new" is unambiguous. Aplt. Br. at 26 n.7; Aplee. Br. at 9, 11. They urge that

different meanings of "new" are clear from the ADA's plain language. As noted above, DRAC contends that "new" means any vehicle manufactured after the passage of the ADA, while the Cab Companies contend that "new" means not previously used. Both are plausible interpretations–the statute is ambiguous with respect to the word "new."

DRAC's argument that the congressional purpose in enacting the ADA renders the term "new" unambiguous is unpersuasive. We do not disagree that the broad, general purpose of the ADA was to eliminate discrimination against people with disabilities. Nor do we disagree that accessible transportation was a "critical component" of the ADA. See H.R. Rep. 101-485(II), at 37 (1990); H.R. Rep. 101-485(IV), at 23 (1990).[1] But the ADA does not seek to equalize without exception. The ADA does not require all accommodation at any cost for all disabilities. For example, we have held that the ADA does not require accommodation of oversized mobility devices. Kiernan v. Utah Transit Auth., 339 F.3d 1217, 1222 (10th Cir. 2003). The ADA does not mandate that all private transportation entities provide accessible vehicles—a taxi fleet consisting entirely of non-accessible vehicles would be in accord with the ADA. See 42 U.S.C. § 12184(b)(3). Witness testimony before Congress preceding the passage

---

[1] The parties have not cited, nor have we discovered, any congressional record addressing the specific question before us in this case—the definition of "new." See H.R. Rep. No. 101-485 (Parts I-IV); H. Conf. R. No. 101-596.

of the ADA recognized that costs were a consideration in determining which facilities had to be accessible, and what changes had to be made, and Congress balanced accordingly. H.R. Rep. 101-485(II), at 35-36 (1990); see also 42 U.S.C. § 12182(b)(2)(A)(iv) (requirement that barriers be removed when readily achievable). These limitations demonstrate that the ADA is more nuanced than DRAC suggests. As such, we cannot say that Congress unambiguously intended to include all vehicles manufactured after the effective date of the ADA, rather than vehicles that have not been previously used.

Nor are we persuaded by the Cab Companies' argument that the agency regulations render the word "new" unambiguous. We look to the agency regulations only after we determine the relevant statutory term to be ambiguous. General Dynamics Land Sys. v. Cline, 540 U.S. 581, 600 (2004); see also Arco Oil and Gas, Co. v. Environmental Protection Agency, 14 F.3d 1431, 1434-1436 (10th Cir. 1993).

Because we find the statute is ambiguous as to what "new" means, we must look to any relevant agency interpretation or definition and defer to the agency if it has based its definition on a permissible construction. Chevron, U.S.A. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984); see also Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n, 327 F.3d 1019, 1037 (10th Cir. 2003); Pharmanex v. Shalala, 221 F.3d 1151, 1154 (10th Cir. 2000).

As the Cab Companies argue, agency construction is permissible unless it is arbitrary, capricious or manifestly contrary to the statute. Chevron, 467 U.S. at 842-44; Seneca-Cayuga Tribe, 327 F.3d at 1037; Pharmanex, 221 F.3d at 1154.

The Department of Transportation ("DOT") has defined a "new vehicle" as one "which is offered for sale or lease after manufacture without any prior use." 49 C.F.R. § 37.3. DRAC contends that we should not defer to the DOT's interpretation because the agency did not apply its expertise, resulting in a regulatory definition that is arbitrary and capricious and one that may be rejected in favor of one in accord with the ADA's fundamental purpose. As we discuss below, the DOT's definition, drawing on an ordinary meaning of "new," is a permissible construction that is not arbitrary, capricious or contrary to statute.

Chevron deference is warranted when it "appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." Gonzales v. Oregon, 126 S.Ct 904, 915 (2006) (quoting United States v. Mead Corp., 533 U.S. 218, 226-27 (2001)). Congress explicitly vested the Secretary of Transportation with the authority to "issue regulations in an accessible format to carry out sections 12182(b)(2)(B) and (C) of this title and to carry out section 12184 of this title (other than subsection (b)(4))." 42 U.S.C. § 12186(a)(1). Congress also required that the agency regulations be consistent

with "the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board." 42 U.S.C. § 12186(c). The Architectural and Transportation Barriers Compliance Board ("ATBCB") is comprised of the twelve executive cabinet members and thirteen members of the public, appointed by the President and of whom at least a majority are persons with disabilities. 29 U.S.C. § 792(a)(1)(A) and (B). The ATBCB conducts investigations, holds public hearings and issues any order it deems necessary to ensure ADA compliance. Id. at (e). Among the purposes of the ATBCB is to establish and maintain minimum guidelines for ADA compliance and to promote accessibility though all segments of society. 29 U.S.C. § 792(a)(2)(B)(b). Of importance here, the ATBCB also defines "new vehicle" as "a vehicle which is offered for sale or lease after manufacture without any prior use."[2] ADA Accessibility Guidelines for Transportation Vehicles § 1192.3 (available at http://www.access-board.gov/transit/html/vguide.htm#AD, last checked Mar. 13, 2006). The agency definition, therefore, is wholly consistent (in fact, identical)

---

[2] DRAC's argument that the agency definition need not follow from the ATBCB's establishment of minimum requirements is correct, Aplt. Reply at 13, to the extent that the agency would be free to go above and beyond the ATBCB. DRAC fails, however to persuade us that the ATBCB's definition is not heavily instructive on whether the DOT's definition is arbitrary or capricious. Moreover, DRAC's conclusory statement that the ATBCB's definition is "far *below* the 'minimum'", Id. (emphasis in original), is not accurate, as Congress specifically authorized the ATBCB to determine what in fact the minimum is.

with the specialized board that Congress entrusted with ensuring agency compliance.[3]  As such, we must reject DRAC's argument that the DOT is not entitled to <u>Chevron</u> deference because it acted without "expertise."  Agencies are presumed to have institutional competence, <u>Chevron</u>, 467 U.S. at 844, and DRAC fails to sufficiently rebut that presumption here.[4]

If the Cab Companies do in fact exploit this "gaping loophole," Aplt. Reply Br. at 8, 11, DRAC's remedy lies with Congress, not the courts.  See <u>Robbins</u>, 2006 WL 172357 (quoting <u>Barnhart v. Sigmon Coal Co., Inc.</u>, 534 U.S. 438, 461-62 (2002)).  The agency interpretation creates a loophole no greater than other limitations on accommodation requirements already contained in the ADA.  In light of the deference we accord agency regulations under <u>Chevron</u>, the DOT's definition of "new vehicle" controls here.  The agency definition is consistent

---

[3]  We also note that the DOT explicitly considered, and rejected, DRAC's proposed definition.  Aplee. Supp. App. at 69.

[4]  DRAC argues several reasons why the DOT is not entitled to deference here: (1) the DOT did not apply its specialized experience and expertise because it observed as an "oddity" the difference between the requirements for 'private, not primarily' and 'private, primarily' where the former is required to make accessible all vehicles while the latter is required to make accessible only unused vehicles, Aplt. Br. at 25, 27; and (2) the DOT did not specify its reasons for the definition, Aplt. Br. at 29.  The "oddity" language in the DOT commentary addresses the oddity of having different requirements for 'private, not primarily' and 'private, primarily' and does not suggest that the "used vehicle" exception is what is in fact odd.  Nor is the DOT required to set forth reasons for its regulations.  Regardless, neither of these reasons are compelling enough to overcome the presumption of institutional competence, especially in light of the ATBCB's identical definition.

with one of the common usages of "new," is identical to the ATBCB's definition and is consistent with the ADA's purpose of providing for accommodation with certain limitations. The definition is not arbitrary, capricious or contrary to congressional intent.

We deny the Cab Companies' request for attorney's fees. To the extent that the Cab Companies' request is an appeal from the district court's denial of an award for fees below, they failed to file a timely notice of cross-appeal. See Fed. R. App. P. 4(a)(3). To the extent the Cab Companies' request is one for appellate costs, we find that DRAC presented non-frivolous and colorable arguments on appeal, and thus exercise our discretion to deny fees. See Hoyt v. Robson Companies, Inc., 11 F.3d 983, 984 (10th Cir. 1993).

AFFIRMED.