USA TAX LAW CENTER, INC., d/b/a
U.S. Fax Law Center, Inc.,
Plaintiff–Appellant,

v.

OFFICE WAREHOUSE WHOLESALE,
LLC, d/b/a OWW, LLC, Defendant–
Appellee.

No. 05CA2742.

Colorado Court of Appeals,
Div. IV.

April 19, 2007.

Sawaya, Rose, Funderburg & Kaplan, P.C., Richard B. Rose, Denver, Colorado, for Plaintiff–Appellant.

No Appearance for Defendant–Appellee.

Opinion by Judge HAWTHORNE.

In this Telephone Consumer Protection Act (TCPA) case, plaintiff, USA Tax Law Center (USA), appeals the trial court's partial summary judgment in favor of defendant, Office Warehouse Wholesale, LLC (Office). The trial court determined that USA did not

have a private right of action for Office's failure to include required identifying information on its facsimile advertisements. We affirm.

## I. Background

In 2003, USA sued Office under the TCPA, 47 U.S.C. § 227 (2001), for sending fifty-four unsolicited facsimile advertisements to its assignors. USA alleged that each unsolicited advertisement violated § 227(b) and entitled it to $500 in statutory damages. It also alleged that the unsolicited advertisements did not contain the identifying information required by § 227(d) and the Federal Communications Commission (FCC) regulation, 47 C.F.R. § 68.318(d) (2006) (the regulation), which, in USA's view, constituted a separate violation of the TCPA entitling it to an award of an additional $500 in statutory damages for each advertisement. Finally, USA alleged that it was entitled to treble damages under the statute because the violations were knowing or willful.

Office moved to dismiss, arguing that the TCPA did not provide a private cause of action for its failure to include required identifying information, and, as a result, USA was not entitled to statutory damages for those violations. The trial court, treating the motion as one for summary judgment, granted partial summary judgment in favor of Office. It found that no private cause of action existed under the TCPA for violations of facsimile identification requirements.

In 2005, the trial court granted USA's motion for default judgment, finding Office sent fifty-four unsolicited facsimile advertisements in violation of § 227(b). It awarded USA statutory damages and treble damages for each violation, totaling $81,000. This appeal as to the facsimile identification claims followed.

## II. Standard of Review

■ Our standard of review in this case is de novo for two reasons. First, we review a trial court's decision to grant summary judgment de novo because it presents a question of law. *Polk v. Hergert Land & Cattle Co.,* 5 P.3d 402, 404 (Colo.App.2000). Second, we review a trial court's interpretation of a statute de novo because it presents a question of law. *State ex rel. Salazar v. Cash Now Store, Inc.,* 31 P.3d 161, 164 (Colo. 2001).

## III. Right of Action Under Regulation

USA contends that the trial court erred in granting partial summary judgment in Office's favor because even though no private right of action exists to enforce § 227(d)'s identification requirements, one exists to enforce the same requirements in the regulation. We disagree.

■■ "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval,* 532 U.S. 275, 286, 121 S.Ct. 1511, 1519, 149 L.Ed.2d 517 (2001). Absent statutory intent to create a private right of action, "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander, supra,* 532 U.S. at 286–87, 121 S.Ct. at 1520.

■ "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979).

■ To determine whether a federal statute creates a private right of action, we may consider whether (1) the plaintiff falls within the class the statute was enacted to benefit; (2) there is evidence of any legislative intent to create or to deny a private right of action; (3) a private right of action is consistent with the purposes of the legislative scheme; and (4) the area of law is one traditionally relegated to the states. *See Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975); *Henderson v. Bear,* 968 P.2d 144, 146 (Colo.App.1998). More recent Supreme Court decisions have held the determinative question is "whether Congress intended to create the private right of action asserted." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *see Henderson v. Bear, supra.*

"Language in a regulation may invoke a private right of action that Congress through the statutory text created, but it may not create a right that Congress has not." *Alexander, supra,* 532 U.S. at 291, 121 S.Ct. at 1522; *see also Freeman v. Fahey,* 374 F.3d 663, 665 (8th Cir.2004) (no private right of action under 42 U.S.C. § 5309 even though regulations under the statute mentioned private right of action). Further, a regulation may not amend statutory language or add something that is not already present. *California Cosmetology Coal. v. Riley,* 110 F.3d 1454, 1460 (9th Cir.1997).

"The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979).

When interpreting a federal statute, we begin with the statutory language itself. *Joy Techs., Inc. v. Sec'y of Labor,* 99 F.3d 991, 997 (10th Cir.1996). "If the terms of the statute are clear and unambiguous, the inquiry ends and we simply give effect to the plain language of the statute." *Toomer v. City Cab,* 443 F.3d 1191, 1194 (10th Cir.2006). We also interpret the statutory language according to its plain and ordinary meaning. *See Toomer, supra.*

Likewise, we interpret federal regulations in a manner that gives them effect according to their plain meaning. *See Time Warner Entm't Co. v. Everest Midwest Licensee, L.L.C.,* 381 F.3d 1039 (10th Cir.2004).

Because this is an issue of first impression in Colorado, we may look to courts of other states for guidance. *See In re Marriage of Bolding–Roberts,* 113 P.3d 1265, 1267 (Colo.App.2005). In addition, because this case involves a federal statute, lower federal court decisions may also provide us with some guidance, although only a decision of the U.S. Supreme Court would be binding. *See Cmty. Hosp. v. Fail,* 969 P.2d 667, 672 (Colo.1998).

## A. Statutory Language

Here, we are faced with two separate provisions of the TCPA. First, § 227(b)(1)(C) prohibits persons from sending unsolicited advertisements to a telephone facsimile machine unless there is an "established business relationship" between the sender and the recipient. Section 227(b)(3) provides a private right of action to enjoin violations of § 227(b), and the regulations promulgated under that subsection, and to recover actual damages or $500, whichever is greater, for each violation, or both. 47 U.S.C. § 227(b)(3)(A) ("any person or entity" may bring an action in state court "based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation"). It also provides for treble damages for willful or knowing violations. 47 U.S.C. § 227(b)(3).

Second, § 227(d)(1)(B) requires persons sending messages using telephone facsimile machines to clearly mark

> in a margin at the top or bottom of each transmitted page of the message or on the first page of the transmission, the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual.

Section 227(d) does not contain specific language creating a private right of action. However, the TCPA authorizes state attorneys general to institute civil proceedings for violations of the TCPA or its regulations. 47 U.S.C. § 227(f).

## B. Regulations

Section 227(b)(2) requires the FCC to "prescribe regulations to implement the requirements of this subsection."

Section 227(d)(2) requires the FCC to

> revise the regulations setting technical and procedural standards for telephone facsimile machines to require that any such machine which is manufactured after one year after December 20, 1991, clearly marks, in a margin at the top or bottom of each transmitted page or on the first page of each transmission, the date and time sent, an identification of the business, other entity, or individual sending the message, and the telephone number of the sending ma-

chine or of such business, other entity, or individual.

The regulation implementing § 227(d)(2) provides:

> Telephone facsimile machines; Identification of the sender of the message. It shall be unlawful for any person within the United States to use a computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks, in a margin at the top or bottom of each transmitted page of the message or on the first page of the transmission, the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual. If a facsimile broadcaster demonstrates a high degree of involvement in the sender's facsimile messages, such as supplying the numbers to which a message is sent, that broadcaster's name, under which it is registered to conduct business with the State Corporation Commission (or comparable regulatory authority), must be identified on the facsimile, along with the sender's name. Telephone facsimile machines manufactured on and after December 20, 1992, must clearly mark such identifying information on each transmitted page.

47 C.F.R. § 68.318(d).

### 1. Right of Action Expressed or Implied in Regulation

█ Initially, we note that the regulation does not contain any language referring to a private cause of action or individual enforcement. It "focus[es] on the person regulated, rather than the individuals protected," and it "create[s] 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander, supra,* 532 U.S. at 289, 121 S.Ct. at 1521. Accordingly, the regulation does not confer a right to have unsolicited facsimile advertisements contain necessary identifying information. Therefore, USA can prevail only if the regulation was promulgated under § 227(b) and thus comes within the private right of action specifically provided in § 227(b)(3)(A).

### 2. Statutory Authority for Regulation

USA contends that the FCC issued the regulation under § 227(b). We disagree.

#### a. Regulatory Language

█ While § 227(b) requires the FCC to promulgate regulations to implement its provisions, USA cites no authority indicating that the FCC promulgated the regulation under that subsection, and we are not aware of any such authority. *See* B. Caswell, *Regulating Faxing Activity Under State and Federal Law,* 34 Colo. Law. 63, 69 (Dec.2005) (noting that the proposition that the regulation was promulgated under § 227(b) "lacks support").

Moreover, the regulation's language indicates it was not promulgated under § 227(b) because it does not contain any of the language in that subsection and it instead mirrors the provisions of § 227(d). It contains no language referring to a private right of action. And the regulation does not indicate that the FCC promulgated it under § 227(b).

#### b. Reason for Promulgation

Further, the FCC promulgated the regulation to clarify that it "believes that if a fax broadcaster is responsible for the content of the message or for determining the destination of the message ... it should be identified on the facsimile, along with the entity whose products are advertised." *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991,* 68 Fed.Reg. 44144, 44170 (July 25, *2003)(Rules and Regulations).* The FCC indicated that this clarification was necessary based upon its "finding that Section 227(d)(1) of the TCPA mandates that a facsimile include the identification of the business, other entity, or individual creating or originating a facsimile message, and not the entity that transmits the message." *Rules and Regulations, supra,* 68 Fed.Reg. at 44170. Accordingly, we conclude that the FCC promulgated the regulation pursuant to § 227(d). *See Rules and Regulations, supra,* 68 Fed.Reg. at 44170; *see also Kopff v. Battaglia,* 425 F.Supp.2d 76, 91 (D.D.C.2006); *Adler v. Vision Lab Tele-*

*commc'ns, Inc.,* 393 F.Supp.2d 35, 38 (D.D.C. 2005).

### c. Purpose, Redundancy, and Other Authority

USA argues that the *Rules and Regulations* explanation appearing in the Federal Register does not indicate that the regulation was promulgated pursuant to § 227(d), that because § 227(d) and the regulation have different purposes, the regulation would be redundant if it were promulgated under § 227(d), and that the FCC cites other authority. We disagree.

There is no indication that the regulation and § 227(d) have different purposes, nor are they redundant. The regulation simply makes clear that when separate parties generate the content of unsolicited facsimile advertisements and send them, both must be identified. *Rules and Regulations, supra,* 68 Fed.Reg. at 44170.

USA's argument that the FCC cites generally to the entire § 227 also fails. The FCC indeed cites § 227 broadly as authority for its regulations. *See Rules and Regulations, supra,* 68 Fed.Reg. at 44176. However, when compared to the specific language indicating the FCC promulgated the regulation because of the statutory directive in § 227(d), these general citations of authority are not sufficient to persuade us that the FCC promulgated the regulation under a different statute or section. Nor do they persuade us that the FCC promulgated the regulation under § 227(b), the specific subsection for which Congress created a private right of action.

### d. Federal Register Passage

USA also contends that the following passage in the Federal Register supports its argument: "the [FCC] asked whether these rules have been effective at protecting consumers' rights to enforce the TCPA." *Rules and Regulations, supra,* 68 Fed.Reg. at 44170. According to USA, this passage indicates that the regulation's identification requirements are necessary to protect consumers rights, and therefore must have been promulgated pursuant to § 227(b). We are not persuaded.

The cited passage draws a distinction between the right of action created in § 227(b)(3) and the regulation's identification requirements. It does not indicate that the FCC promulgated the regulation to implement § 227(b). And the passage is inconclusive as to whether identification requirements protect consumer rights; it is a question with no answer.

Moreover, the FCC had an opportunity to address whether the regulation implicated the private right of action in the paragraph in the Federal Register directly following its discussion of the reasons for creating the regulation. However, the FCC declined "to make any determination about the specific contours of the TCPA's private right of action." *Rules and Regulations, supra,* 68 Fed.Reg. at 44170. Presumably, had the FCC intended for the regulation to be enforced under § 227(b)(3), it would have specifically indicated that intent in the regulation or in the explanation in the Federal Register.

### e. Manufacturing Standards

We also disagree with USA's argument that the regulation could not have been promulgated pursuant to § 227(d)(2) because that subsection directs the FCC to revise regulations pertaining to the manufacture of facsimile machines, not those pertaining to the transmission of facsimile advertisements.

When a particular statutory section requires a particular type of regulation, an agency is not prohibited from promulgating other regulations under that section. *See Pinney v. Nat'l Transp. Safety Bd.,* 993 F.2d 201, 202 (10th Cir.1993) (agency with general grant of regulatory authority may create regulations reasonably related to enabling legislation).

The regulation clearly establishes "technical and procedural standards" for the manufacture of facsimile machines as required by § 227(d)(2). It appears in part 68 of the telecommunication regulations, entitled "Connection of the Terminal Equipment to the Telephone Network," and in subpart D, entitled "Conditions for Terminal Equipment

Approval." And the last sentence clearly sets standards for the manufacture of telephone facsimile machines. Accordingly, we conclude that the regulation was promulgated under § 227(d).

### f. Congressional Intent

Finally, we reject USA's argument asserting a private right of action by implication because it would require us to disregard Congressional intent. Congress expressly created a private right of action to enforce § 227(b) and no such right of action to enforce § 227(d). Thus, Congress did not intend to create an express or implied right of action to enforce the identification requirements in § 227(d). *See Touche Ross & Co., supra,* 442 U.S. at 571–72, 99 S.Ct. at 2486–87 (no right of action where Congress placed a right of action in one section of a statute, but not the section under which the plaintiff sued); *Kopff, supra,* 425 F.Supp.2d at 91; *see also Klein v. Vision Lab Telecommc'ns, Inc.,* 399 F.Supp.2d 528, 539–40 (S.D.N.Y. 2005)("The TCPA empowered citizens to sue for relief from the problem created by the receipt of unsolicited fax advertisements, not for deficiencies in the faxes received."); Caswell, *supra,* 34 Colo. Law. at 69.

USA concedes that Congress created no express or implied private right of action to enforce the provisions of § 227(d); however, it insists that we should recognize a private cause of action to enforce identical requirements contained in the regulation. Taken to its logical conclusion, USA's argument would require us to adopt a construction of the regulation that would allow it to amend a federal statute, and create a private right of action in the absence of Congressional intent. We cannot adopt such a construction. *See Alexander, supra,* 532 U.S. at 291, 121 S.Ct. at 1522; *Freeman, supra,* 374 F.3d at 665; *California Cosmetology Coal., supra,* 110 F.3d at 1460.

Therefore, we conclude that the regulation was promulgated under § 227(d), and may not be enforced under the private right of action created in § 227(b)(3).

### 3. Remedial Purpose

■ USA argues that because the TCPA is a remedial statute which must be broadly construed, an implied right of action under § 227(b) to enforce the regulation is consistent with its purpose and we should err in favor of implying a private right of action. We disagree.

■ The TCPA is a remedial statute. *See Hooters, Inc. v. Am. Global Ins. Co.,* 272 F.Supp.2d 1365, 1375 (S.D.Ga.2003), aff'd, 157 Fed.Appx. 201, 2005 WL 3292089 (11th Cir. 2005)(not selected for publication). And, as a remedial statute, it is entitled to broad construction. *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967).

■ However, even when a statute has a remedial purpose, that "will not justify reading a provision 'more broadly than its language and the statutory scheme reasonably permit.' " *Touche Ross & Co., supra,* 442 U.S. at 578, 99 S.Ct. at 2490 (quoting *Sec. & Exch. Comm'n v. Sloan,* 436 U.S. 103, 116, 98 S.Ct. 1702, 1711, 56 L.Ed.2d 148 (1978)).

Because USA has conceded and we have concluded that Congress did not intend to create a private right of action to enforce the identification provisions of the TCPA, we cannot construe the regulation to create a cause of action based upon the remedial purposes of the statute, even if such a construction would discourage senders from evading the requirements of the statute. *See Alexander, supra,* 532 U.S. at 286–87, 121 S.Ct. at 1520.

Nor does USA's argument that permitting recovery for violations of the regulation would vindicate consumer rights persuade us any differently. USA was able to bring this suit against Office despite the lack of identifying information in its advertisements. The private right of action for unsolicited facsimile advertisements alone provides sufficient deterrence.

Further, a private right of action to enforce identification requirements would permit double recovery for unsolicited faxes that also lacked proper identifying information. This construction is inconsistent with Congressional intent because it would give plain-

tiffs a windfall not contemplated by Congress. *See Klein, supra,* 399 F.Supp.2d at 539–40.

Therefore, we conclude that the TCPA's remedial nature does not permit us to imply a private right of action under § 227(b) to enforce the regulation's identification requirements.

### 4. Other Jurisdictions

USA invites us to follow the "growing consensus" of trial courts in this jurisdiction and other jurisdictions that a private right of action exists to enforce the regulation. We decline the invitation.

While several state courts have determined that such a private right of action exists, we are persuaded by the better reasoned federal authority to the contrary. Most of the unpublished cases cited by USA that found a private right of action dealt with the issue only in passing. At least four federal courts considering the identical question before us have determined that no private right of action exists to enforce the regulation. *See Kopff, supra; Adler, supra; Klein, supra; see also G.M. Sign v. Franklin Bank,* (N.D. Ill. No. 06 C 0949, Apr. 19, 2006), 2006 WL 1132386(unpublished memorandum opinion). And, in *Klein,* the court declined to follow the "growing consensus" of trial court decisions because it found the justifications in those decisions unconvincing. *Klein, supra,* 399 F.Supp.2d at 540. We agree.

Further, there are signs that the "growing consensus" is actually receding. Specifically, it appears that Ohio recently reversed course. While an Ohio trial court found a private right of action in *Yavitch & Palmer Co. v. U.S. Four, Inc.,* (Franklin County Mun. Ct. No.2004 CVF 02885, Oct. 3, 2005), 2005 WL 3244052, *rev'd on other grounds,* (Ohio Ct.App. No. 05AP1234, Sept. 14, 2006), 2006 WL 2627560 (unpublished opinion), a subsequent Ohio appellate decision found no such right of action. *Ferron & Assocs., L.P.A. v. U.S. Four, Inc.,* (Ohio Ct.App. No. 05AP659, Dec. 29, 2005), 2005 WL 3550760(unpublished opinion).

Therefore, we decline to follow those courts that have found a private right of action to enforce the regulation.

Because there is no private right of action to enforce the identification requirements in the regulation, USA could not have prevailed on its claim as a matter of law, and the trial court did not err in granting partial summary judgment.

The judgment of the trial court is affirmed.

CASEBOLT and BERNARD, JJ., concur.