**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 17, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TODD SPERRY,

      Plaintiff - Appellant,

v.

JASON T. MAES, individually, and in his
official capacity as a detective with the
Castle Rock Police Department;
GEORGE ELDER, individually, and in
his official capacity as an officer with the
Castle Rock Police Department; TOWN
OF CASTLE ROCK COLORADO, a
municipality,

      Defendants - Appellees.

No. 13-1336
(D.C. No. 1:10-CV-03171-RPM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **HARTZ** and **HOLMES**, Circuit Judges.

Plaintiff Todd Sperry filed claims against Castle Rock police officers Jason Maes

and George Elder and the Town of Castle Rock, Colorado for malicious prosecution in

violation of the Fourth Amendment under 42 U.S.C. § 1983 and for the failure to

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

recognize and accommodate a disability under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. The district court granted summary judgment in favor of the defendants. We affirm.

## I.

This case arises out of a criminal theft investigation conducted by the Town of Castle Rock Police Department. Todd Sperry contends that the investigation and his subsequent arrest were (1) in retaliation for prior complaints made by Sperry regarding how the department investigated the car crash that killed his son, and (2) without probable cause because the officers knew he was mentally disabled and unable to form the mens rea required for the type of theft charged.

### A. Factual background

On November 13, 2007, Todd Sperry's son died in a one-car crash investigated by the Castle Rock Police Department. Sperry, who is cognitively disabled and has trouble reading and adding simple numbers, was greatly upset by the crash and by the resulting police investigation. On the night of the crash, then-Castle Rock Police Chief Tony Lane went to Sperry's house because officers said Sperry was "kind of out of control" and expressed concern he might hurt himself or somebody else. Aplee. Supp. App. at 403. Lane stated that he did not know about Sperry's mental disability at the time and that Sperry's reactions were not "unexpected or out of the ordinary" for someone who had just lost a son. Id. Lane said he later heard that Sperry was "different" and sometimes "mildly irrational" (though he would not go so far as to say "retarded"), but he was

2

primarily concerned with Sperry as a "potential threat to officer safety." Id. at 403-04.

In the days after the crash, Sperry said he called Corporal Ty Petersen, an officer with the Castle Rock Police Department, approximately 20 times to make complaints about the investigation. According to Sperry, Petersen "threatened to arrest [him] for interfering with his investigation" and demanded to see photographs that Sperry had taken of the scene. Id. at 391. Sperry said "a lot of police came over asking for the photos" and threatened him following the crash, but he was not able to identify most of them. Id. Police officers also took Sperry to a mental health facility several days after the accident.

Lane said everyone in the department knew about the fatal crash, but said he was unaware of what officers knew about Sperry's mental health other than some circulated safety information. Specifically, a police lieutenant emailed the entire department shortly after the accident to tell officers that Sperry was taken in for a mental health evaluation and to advise them that Sperry had displayed aggressive behavior in the past.[1] Id. at 462. Sperry stated that the unnamed officers he interacted with "knew" about his disability because his "family told them and I told them," and "they said I wasn't talking right." Aplee. Supp. App. at 385.

---

[1] Sperry provided other emails from police officials regarding Sperry, but none were addressed to the named defendants or the entire police force, so it is unclear to what extent that information reached the officers who later investigated Sperry for theft. Those emails placed an alert on Sperry's residence as a potential threat to officer safety and indicated that Sperry "has mental health issues," can be "extremely vocal and boisterous in his expressions" when not on medication, "easily angers and is difficult to reason with," and was still "very confrontational" as of November 16, 2007. Aplee. Supp. App. at 463-66.

In February 2008, Sperry was issued a debit card by H&R Block containing his tax refund. On or shortly before April 14, 2008, the card's balance was -$76.56. Between April 14, 2008, and June 6, 2008, Sperry used the card 73 times at a particular gas station and made a total of $5,109.78 in purchases. Each time the credit card reader declined the card and displayed a message that a bank authorization code was required, and each time Sperry used what he said was his personal identification number (PIN), 1932, to make the purchase.[2] It is unknown whether Sperry understood that his debit card had a finite balance or that his PIN was not a valid bank authorization code, but after a clerk contacted the issuing bank on June 6, 2008, and informed Sperry that the debit card had no money on it, Sperry never returned to the store.

Clifton Porter, an employee of the oil company affiliated with the gas station who was familiar with the credit card system, investigated Sperry's debit card charges for the company and filed a police report with the Castle Rock Police Department on July 8, 2008. Officer George Elder took Porter's statement that day, which detailed the charges and Porter's belief that the funds had been obtained illegally by Sperry "duping" the gas station employees into letting him use an unauthorized code. Id. at 68, 78. Elder passed the information he received from Porter on to a supervisor and did not conduct any

---

[2] Clifton Porter, an employee of the oil company affiliated with the gas station, stated that any combination of four numbers would work to "force" a sale through the system, which assumes that the numbers come from the clerk calling a bank for authorization.

4

further investigation into the matter.[3] Elder said he did not know at any point that Sperry was cognitively disabled.

Detective Jason Maes was assigned to follow up on Elder's initial police report. Maes said he had never met Sperry and did not know he had a mental disability. Sperry disputed this in his deposition. Sperry identified Maes as someone who had previously spoken with Sperry after the death of his son regarding a different arrest warrant and said, "We know there's something wrong with you. . . . You're different. Did your mom drop you when you were a baby." Id. at 296. Sperry identified Maes not by his name tag, but by appearance ("holes in his face") and by the officer saying his name was "Maes" to another person. Id.

In performing his investigation, Maes reviewed the credit card receipts and conducted a photo line-up with the two gas station clerks, both of whom identified Todd Sperry as the suspect. Maes interviewed the clerks and said neither indicated Sperry might have a mental disability, with both describing the debit card misuse as intentional. After reviewing the receipts and records from H&R Block, Maes said he noticed multiple days with multiple charges at the same place, which he believed based on his experience to be "uncommon and highly suspect." Id. at 301. Maes also said he considered it

_____

[3] Elder had conducted one prior investigation into Todd Sperry and his wife for illegal dumping, but stated that he had never met either person and only made one phone call to the house. He said he did not remember Sperry's name when Porter filed his report. Elder was reportedly the only African American officer in the Castle Rock Police Department at the time, and Sperry stated that he never interacted with an officer of that description.

5

"suspicious" that Sperry never returned to the gas station after June 6, 2008, despite being a frequent customer for the previous two months. Id.

Maes filed an arrest affidavit on September 4, 2008, and stated in a later affidavit that he based his probable cause determination for the theft charge[4] on the "totality of the circumstances," and that Sperry's use of a code "was not as important as the fact that he did in fact override the system and knowingly overcharge his account with a significant sum." Aplee. Supp. App. at 301-02, 324. However, his arrest affidavit does state that Sperry "somehow obtained a pre-authorization code" to override the credit card system, which Sperry disputes. Id. at 323. Maes said he did not uncover any information during his investigation about Sperry having a mental disability or how that disability would have influenced Sperry's actions. Commander Tim Gorman stated that at the time of Sperry's arrest, the Castle Rock Police Department did not have formal policies for dealing with suspects with particular disabilities other than deafness, but that the manual was updated in or before 2010 to reflect the department's requirement that patrol officers

---

[4] The relevant Colorado theft statute reads:

> (1) A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception; or receives, loans money by pawn or pledge on, or disposes of anything of value or belonging to another that he or she knows or believes to have been stolen, and:

> (a) Intends to deprive the other person permanently of the use or benefit of the thing of value.

Colo. Rev. Stat. § 18-4-401.

undergo crisis intervention training for interacting with individuals with mental health disorders.[5]

Upon receipt of Maes' arrest affidavit, the district attorney's office filed a complaint against Sperry and a motion for an arrest warrant, which the court granted. Three separate prosecutors who worked on the case indicated that they believed that probable cause existed to arrest Sperry for theft based on Maes' arrest affidavit. Deputy District Attorney Brittany Martin, who was working on the case in 2010 when the district attorney's office made the decision to dismiss the charges against Sperry, stated the dismissal was due to "new information that led us to conclude that we might have some difficulty in successfully proving the case to a jury beyond a reasonable doubt," as well as an agreement by Sperry to reimburse the gas station. Id. at 336.

**B. Procedural history**

After an initial timely complaint, Sperry filed a Third Amended Complaint on September 19, 2011. That complaint named George Elder, Jason Maes, and the Town of Castle Rock as defendants (the first two parties in their individual and official capacities). Count 1 of Sperry's complaint alleged a cause of action under 42 U.S.C. § 1983 for violations of due process, deprivations of liberty, and excessive force, which the district court interpreted as a malicious prosecution claim. The violation allegedly stemmed from the creation of "false police reports" by the named defendants and from the arrest

---

[5] Crisis intervention training may have been available earlier than 2010 as optional training, according to Elder's statements.

7

affidavit created by Maes containing false information to "justify the unlawful purpose of the credit card case in order to harass, discredit and harm Mr. Sperry." Aplt. App. at 191-92. The alleged false information related to whether Sperry knowingly used "1932" as a pre-authorization code rather than as a PIN.

Count 2 of the complaint alleged violations of the Americans with Disabilities Act (ADA) and corresponding Colorado state law. Sperry's complaint alleged that the named defendants and other members of the Castle Rock Police Department knew about his disability based on comments purportedly made by officers, as well as the officers' involvement in taking Sperry in for a mental health evaluation shortly after the death of his son. The complaint stated that police officers attributed to Sperry the "nefarious and brilliant ability to obtain and use a secret authorization code to deceive" the gas station clerks and credit card company despite the officers' alleged knowledge of his cognitive disability. Id. at 194. Count 2 also alleged that the town is liable for failing to train its police officers on how to interact with disabled suspects such as Sperry.

The defendants filed a motion for summary judgment on all claims, which the district court granted. The court disposed of Sperry's § 1983 claim against Elder on the ground that Sperry did not show that Elder "caused his prosecution" by "exert[ing] improper pressure or influence over the prosecutor or conceal[ing] or misrepresent[ing] material facts to the prosecutor." Aplee. Supp. App. at 507. The court also concluded, based upon Elder's lack of interaction with the Sperry family and the limited information about Sperry known to have been circulated throughout the police department, that there

8

was insufficient evidence to indicate that Elder knew Sperry had a cognitive disability that made him incapable of engaging in theft involving a debit account.

The court disposed of Sperry's § 1983 claim against Maes by concluding that Maes had probable cause to charge Sperry with theft and that nothing in the record indicated Maes had knowledge that Sperry was unable to perform basic math skills and could not understand a debit account. With regard to Sperry's accusation that Maes made a false statement in his arrest affidavit pertaining to Sperry's use of a special authorization code, the court ruled that even without that statement, the manner in which Sperry used the debit card supported probable cause. Because both § 1983 claims against the officers failed, the court concluded that any claim against the town under a municipal liability theory is also subject to dismissal.[6]

The court disposed of Sperry's ADA claims by concluding that neither of the two proposed theories of Title II liability was applicable. With regard to the wrongful arrest theory, the court concluded the circumstances of Sperry's disability were not known by the officers at the time Sperry was investigated for theft and that Sperry's actions thus reasonably appeared to be unlawful. On the reasonable accommodation theory, the court noted that no statute or case law imposed a duty on officers to investigate whether a disability exists, particularly when a suspect's course of conduct does not manifest a

---

[6] It is not clear from the Third Amended Complaint that Sperry made a municipal liability claim against the town under § 1983 with regard to the alleged malicious prosecution, but both the defendants and the district court appeared to construe the complaint broadly to include such a claim.

9

mental disability.  Lastly, the court refused to consider Sperry's failure-to-train claim under the ADA because it was not sufficiently fleshed out.

## II.

On appeal, Sperry contends the district court erred in granting summary judgment because it ignored genuine issues of material fact and did not resolve factual issues in the light most favorable to the non-moving party. Sperry argues such improper judicial determinations of fact led to incorrect rulings on his § 1983 and ADA claims. Aplt. Br. at 2, 15-28.

We review grants of summary judgment de novo and "apply the same legal standard used by the district court." Toomer v. City Cab, 443 F.3d 1191, 1194 (10th Cir. 2006).  "Summary judgment is proper if the evidence, viewed in the light most favorable to the non-moving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." Id.

For cases involving qualified immunity, however, the court reviews summary judgment orders deciding such issues differently. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  In particular, when a defendant asserts qualified immunity, the plaintiff bears the burden of establishing first, "that the defendant's actions violated a

10

constitutional or statutory right," and second, "that the right at issue was clearly established at the time of the defendant's unlawful conduct." Id. at 1128 (citing Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995)).[7] "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." Albright, 51 F.3d at 1535. If the plaintiff succeeds in carrying his burden, then the burden shifts to "the defendant to show that there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to the defendant at the time." Felders ex rel. Smedley v. Malcom, 755 F.3d 870, 877 (10th Cir. 2014) (quoting Mick v. Brewer, 76 F.3d 1127, 1131 (10th Cir. 1996)).

### A. Malicious prosecution claim under 42 U.S.C. § 1983

Although the district court granted summary judgment to the defendants on the merits, we analyze this case in the context of qualified immunity. The defendants raised the defense of qualified immunity in both their response to Sperry's complaint and their motion for summary judgment. "Because qualified immunity protects government officials from suit as well as from liability, it is essential that qualified immunity claims be resolved at the earliest possible stage of litigation." Hunter v. Bryant, 502 U.S. 224, 233-34 (1991) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Thus, we must determine whether the evidence, construed in the light most favorable to Sperry, demonstrates that there was a violation of his clearly established constitutional rights.

---

[7] The Supreme Court decided in Pearson v. Callahan that courts may conduct the analysis in either order. 555 U.S. 223, 236 (2009).

Sperry argues his constitutional rights were violated by (1) Maes making material false statements in his arrest affidavit pertaining to Sperry, (2) Elder and Maes omitting material information about his mental disability in their report and arrest affidavit, respectively, that would negate probable cause, and (3) Elder and Maes' retaliatory motives for investigating Sperry. Sperry is correct that this court considers material false statements and omissions negating probable cause in a warrant to be clearly established violations of the Fourth Amendment. Taylor v. Meacham, 82 F.3d 1556, 1562 (10th Cir. 1996) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978); Stewart v. Donges, 915 F.2d 572, 581-83 (10th Cir. 1990)). The absence of probable cause in particular is what gives a § 1983 malicious prosecution claim its constitutional character.

More factors can be considered, however. We "take[ ] the common law elements of malicious prosecution as the 'starting point' for the analysis of a § 1983 malicious prosecution claim, but always reach[ ] the ultimate question, which [we] must, of whether the plaintiff has proven a *constitutional* violation." Taylor, 82 F.3d at 1561 (emphasis in original). The five elements typically considered in a § 1983 malicious prosecution claim are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." Novitsky v. City Of Aurora, 491 F.3d 1244, 1258 (10th Cir. 2007). We analyze how these factors apply to Officers Elder and Maes, in turn, and conclude that neither officer committed a constitutional violation.

12

**1. Officer Elder**

The district court concluded that Sperry's complaint against Officer Elder failed on the first element of a malicious prosecution claim because Elder's limited involvement in the investigation was not sufficient to show he "caused" Sperry's prosecution. Sperry argues on appeal that the district court improperly believed Elder's statement that he did not know Sperry had a disability and that Elder should have included his knowledge of Sperry's disability in his report. Even if this court were to go further in its factual inferences in Sperry's favor, as he desires, and assume that Elder knew Sperry had some type of cognitive disability, Elder's assignment in this case was to memorialize a victim's statement, not to investigate the crime or absolve Sperry.

As this court stated in Taylor, generally for police officers, "the chain of causation [for a malicious prosecution claim] is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." 82 F.3d at 1564 (quoting Reed v. City of Chicago, 77 F.3d 1049 (7th Cir. 1996)). Elder did not make any knowing misstatements because the report memorialized the statements of a victim for further investigation; none of Elder's "statements" were Elder's own observations, and none went to the prosecutor directly. Thus, Elder did not commit a constitutional violation and is entitled to qualified immunity.

**2. Officer Maes**

13

Perhaps more crucially, both Officer Maes and Officer Elder are entitled to qualified immunity because there was probable cause to support Sperry's arrest. Sperry argues on appeal that Maes did not have probable cause because Maes made material misstatements in and omissions from his arrest affidavit regarding Sperry's cognitive disability and capacity to have the mens rea for theft. On the issue of false statements within or omitted information from arrest affidavits, this court has stated:

> Where false statements have been included in an arrest warrant affidavit, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit. In a case involving information omitted from an affidavit, the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.

Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996) (internal citations and quotation marks omitted).

Federal law requires that Maes knowingly or recklessly made a false statement. Franks, 438 U.S. at 155-56. The only statements in the arrest affidavit that Sperry points to as false are (1) Maes' characterization that Mark Bigler of H&R Block stated Sperry "must have" provided a pre-authorization code to the gas station attendants and (2) Maes' statement that Sperry "somehow obtained a pre-authorization code." Aplee. Supp. App. at 322-23. Given that Porter stated that Sperry "scammed" the gas station employees and repeatedly used the same "1932" code to override the system, and that Porter represented himself as someone who knew the company's credit card system well, Maes' statements

14

in the arrest affidavit were plausible, non-reckless characterizations of the information he gleaned from his investigation.  Id. at 78.

Thus, it is questionable whether this information could be considered knowingly false, but even construing it in that light, it is not material.  "Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)) (parentheticals in original).

Setting aside the two challenged statements, the arrest affidavit offers ample evidence to indicate Sperry had engaged in theft, including but not limited to the high number of transactions in a relatively brief period of time, the consistency of the encounters, the victim statements, the statement from Bigler that Sperry should not have been able to spend more than his refund with the card, and that Sperry never returned to the gas station after the clerk who first checked with the bank told Sperry that the card had no money on it.  Moreover, all of the district attorneys who provided affidavits indicated their own assessments of probable cause were based on the totality of the circumstances, not just the use of a pre-authorization code.  Thus, the statements in question are not material to the probable cause determination.

Maes' alleged omission is a slightly more challenging question.  However, even considering the record in the light most favorable to Sperry, there is no evidence that

15

Maes knew Sperry was incapable of understanding a bank account. It is also not clear that an officer's knowledge of a suspect's unspecified cognitive disability would negate probable cause. We have found no case standing for the proposition that an officer must take a suspect's potential mental disability into account in determining probable cause.[8] Even someone who cannot manage his finances is capable of forming the mens rea for theft, and Sperry's repeated use of the debit card at the very least indicated that Sperry understood that the card represented money and that he was receiving goods and services by using it.

While it is possible that Maes could have uncovered Sperry's alleged inability to maintain his finances prior to requesting an arrest warrant, a police officer who has reasonably concluded that probable cause exists to arrest a suspect is not required to further investigate all possible defenses or claims of innocence. See Romero v. Fay, 45 F.3d 1472, 1477-78 (10th Cir. 1995). As one circuit court noted, "the practical restraints on police in the field are greater with respect to ascertaining intent and, therefore, the latitude accorded to officers considering the probable cause issue in the context of mens rea crimes must be correspondingly great." Cox v. Hainey, 391 F.3d 25, 34 (1st Cir. 2004). All the evidence Maes uncovered in his investigation pointed to probable cause

_____

[8] This lack of cases also indicates an omission of this kind is not "clearly established" as a constitutional violation for purposes of qualified immunity. Kerns v. Bader, 663 F.3d 1173, 1183 (10th Cir. 2011) (requiring the well-defined right be established "beyond debate" based on existing Supreme Court or Tenth Circuit precedent or a significant number of cases from outside the circuit). See also Cortez v. McCauley, 478 F.3d 1108, 1114-15 (10th Cir. 2007).

16

that Sperry intentionally committed theft, and Maes was not required to investigate the extent of Sperry's cognitive disability to negate that. To the extent Maes omitted information about Sperry potentially having a cognitive disability, it is therefore not material.

Thus, the existence of probable cause defeats Sperry's claims that Officers Maes and Elder violated his constitutional rights under 42 U.S.C. § 1983. With no constitutional violations at issue, both officers are entitled to qualified immunity. As for the remaining claim against the town, the district court correctly concluded that because the malicious prosecution claims against Elder and Maes fail, any resulting municipal liability for the Town of Castle Rock also fails. Trigalet v. City of Tulsa, Okla., 239 F.3d 1150, 1154-56 (10th Cir. 2001).

### B. ADA claim

Sperry argues this court's decision in Gohier v. Enright, 186 F.3d 1216 (10th Cir. 1999), supports his claim that the Castle Rock police wrongfully arrested him after misperceiving his disability as unlawful conduct. There, this court confirmed that the test to apply in evaluating an ADA claim against police officers under Title II[9] requires a plaintiff prove:

> (1) that he [or she] is a qualified individual with a disability;
> (2) that he [or she] was either excluded from participation in or

---

[9] The statutory language reads: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

17

> denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and
> (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Gohier, 186 F.3d at 1219, quoting Tyler v. City of Manhattan, 849 F. Supp. 1429, 1439 (D. Kan. 1994).

In Gohier, we discussed, but did not expressly adopt, two theories regarding police accommodation of disabilities that other courts had proposed as circumstances in which an individual may demonstrate they were denied the benefit of police services due to their disability.

> The first is that police wrongly arrested someone with a disability because they misperceived the effects of that disability as criminal activity. The second is that, while police properly investigated and arrested a person with a disability for a crime unrelated to that disability, they failed to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

Id. at 1220-21 (citations omitted).

We need not go further here than we did in Gohier in discussing these theories because Sperry has failed to meet the first prong of the test, which requires him to demonstrate that he is a "qualified individual with a disability." The ADA requires that a person establish that he has or is regarded as having "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). In particular, we have held that the "substantially limits" portion of a disability claim must

18

indicate how a person's disability affects him as "compared to the average person in the general population" and that "courts must take into account: (1) the nature and severity of the impairment; (2) the expected duration of the impairment; and (3) the permanent or long term impact resulting from the impairment." Sanchez v. Vilsack, 695 F.3d 1174, 1178 (10th Cir. 2012) (citations omitted).

In this case, there is not sufficient evidence in the record regarding Sperry's impairment such that we could adequately conduct this analysis, nor is Sperry's disability so obvious from the facts that we may assume it substantially limits a major life activity. The extent to which Sperry pleaded his disability include statements in his Third Amended Complaint that "The United States Social Security Administration has classified Mr. Sperry as a person with a mental disability (mild retardation)," and "Mr. Sperry is a disabled person within the meaning of 42 U.S.C. §§ 12101 & 12102 and C.R.S. §§27-10.5-101 &102 [sic]." Aplt. App. at 177, 194. Of the evidence that appears to have been available to the district court in the motion for summary judgment, only the affidavit of a family friend provides any additional insight into Sperry's disability.[10] Adam Devone stated in the affidavit that "Todd is mentally challenged, has trouble reading and adding simple numbers. Todd receives federal funds from the Social Security Administration as a mentally disabled person. Todd's disability is evident to the

---

[10] On appeal, Sperry provides further documentation of his disability from the Social Security Administration, but such evidence does not appear to have been before the district court. Aplt. App. at 283-91. "In reviewing a ruling on summary judgment, we will not consider evidence that was not before the district court." Wilburn v. Mid-South Health Dev., Inc., 343 F.3d 1274, 1281 (10th Cir. 2003).

19

average person, because of the way he talks and acts." Aplee. Supp. App. at 415. Such broad, bare assertions do not establish that Sperry is a qualified individual with a disability under 42 U.S.C. § 12102(1).

Even if this court could assume that Sperry is a qualified individual with a disability under the ADA, there is similarly insufficient evidence that the Castle Rock police officers knew about his disability to the extent of knowing that they must provide an accommodation. "Before a public entity can be required under the ADA to provide a disabled individual an auxiliary aid or service, a public entity must have knowledge of the individual's disability *and the individual's need for an accommodation.*" Robertson v. Las Animas Sheriff's Dept., 500 F.3d 1185, 1196 (10th Cir. 2007) (emphasis added). As discussed above, the evidence in the record shows that Castle Rock police officers had, at best, only some knowledge that Sperry had an unspecified cognitive disability or emotional disorder. In the context of police investigations, such an amorphous level of knowledge does not impose on police officers the duty to further investigate the extent of a suspect's disability, particularly when all of the evidence uncovered indicates the suspect's behavior was intentional.

Thus, we decline to apply either theory of ADA liability for police officers discussed in Gohier. With regard to Sperry's failure-to-train claim, it must be noted that Gohier only briefly noted the possibility of such a claim. 186 F.3d at 1222 ("Gohier might have argued that Title II required Colorado Springs to better train its police officers to recognize reported disturbances that are likely to involve persons with mental

20

disabilities, and to investigate and arrest such persons in a manner reasonably accommodating their disability"). Nonetheless, we do not have to determine whether such a claim exists because, even assuming it does, Sperry has not demonstrated the "deliberate indifference" required to prove a failure-to-train claim by showing that the Town of Castle Rock was "on notice" of the need for "more or different training." City of Canton, Ohio v. Harris, 489 U.S. 378, 390, 397 (1989). Given the dearth of case law on police investigations of people with cognitive disabilities, much less claims against this town in particular, Castle Rock can hardly be considered to have had such notice. Moreover, Sperry does not address what type of training police could or should be required to undergo to better recognize and consider mental disabilities when conducting investigations. The only training that Sperry points to as being available is crisis intervention training, which pertains to police interactions with mentally ill suspects in high-intensity situations, not routine criminal investigations.

Thus, we conclude that the district court correctly determined that Sperry's ADA claims against Maes, Elder, and the Town of Castle Rock must also fail.

## III.

For the reasons set forth above, the district court's order granting summary judgment to Elder, Maes, and the Town of Castle Rock is AFFIRMED. Sperry's motion

21

to file a supplemental appendix is DENIED.

Entered for the Court


Mary Beck Briscoe
Chief Judge

22