[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 26, 2008
THOMAS K. KAHN
CLERK

No. 08-10042
Non-Argument Calendar

_____

Agency No. 7711-1

AERIAL BANNERS, INC.,

Petitioner,

versus

FEDERAL AVIATION ADMINISTRATION,

Respondent.

_____

Petition for Review of a Decision of the
Federal Aviation Administration

_____

**(August 26, 2008)**

Before BLACK, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

The Federal Aviation Administration grants waivers of certain regulations to businesses that tow advertising banners behind airplanes.  Without the waiver, a business cannot conduct air towing operations because aerial towing is generally prohibited.  See 14 C.F.R. § 91.311.  Aerial Banners, as its name indicates, towed aerial banners for advertisers pursuant to a waiver.  After a series of safety problems, the FAA revoked Aerial Banners' waiver, putting the company out of business.  Aerial Banners has petitioned this court to set aside the FAA's revocation.  After review of the briefs and the administrative record, we deny the petition.

**I.**

Aerial Banners operated its banner towing business out of North Perry Airport in Broward County, Florida.  It received a waiver permitting it to conduct banner towing operations.  The waiver was renewed periodically, most recently on October 1, 2006, for a period of two years.  The waiver contained a handful of boilerplate conditions, called Standard Provisions, as well as three pages of Special Provisions which regulated in some detail the manner in which Aerial Banner's towing operations were to be conducted.  The waiver also contained addenda specifying the pilots and aircraft to which it applied.  The Special Provisions provide that "[t]he FAA retains the right to revoke this Waiver of

2

Authorization at any time the Standard or Special Provisions are not strictly adhered to."

The FAA revoked Aerial Banner's waiver by letter dated December 14, 2007. The letter stated that the revocation decision was reached after considering nine safety "events," ranging from paperwork violations to plane crashes, over the preceding two years. The letter noted that some of the events resulted in serious injuries to Aerial Banner pilots. Accordingly, the letter "cancell[ed] the Certificate of Waiver/Authorization issued by the FAA . . . based upon our determination that safety and the public interest would not be served [by] allowing the continuation of such a waiver." The nine incidents, in the order they appear in the FAA's revocation letter and with some elucidation, are the following:

*1. September 25, 2005*. This was a hard landing by an Aerial Banners pilot, who was uninjured and stated the hard landing was caused by a downdraft. Minor damage to the plane resulted. The plane was not carrying a banner at the time, but was attempting to pick one up.

*2. September 26, 2005*. An Aerial Banners pilot was forced to land his airplane outside an airport because he ran out of fuel.

3

*3. December 18, 2005.*[1]  This was another hard landing by an Aerial

Banners pilot, this time flying with a banner.  (A pilot different from the

September 25 incident was flying.)  The plane suffered some damage.  The pilot

was fired for failing to follow Aerial Banners' internal training policies.  The

National Transportation Safety Board investigation attributed the accident to the

pilot's failure to maintain airspeed, which was in part a result of the pilot's

"intentional operation of the airplane with known deficiencies" in violation of the

waiver's Special Provisions.

*4. June 23, 2006.*  An Aerial Banners pilot crashed after losing control of a

plane following an abrupt turn.  He suffered burn injuries.  An NTSB investigation

attributed the accident to pilot error.  The pilot was fired by Aerial Banners.

*5. November 10, 2007.*  This is an airplane crash still under investigation by

the NTSB.  The plane stalled during a sharp turn after dropping its banner in

preparation to land.  The FAA's incident report reflects that the airplane was

destroyed in the crash.  Aerial Banners contends that the NTSB has informally

informed it that pilot error was the primary cause of the crash, that air traffic

control requested the pilot conduct a series of unusual turns, which was a

---

[1] The FAA incorrectly noted in the revocation letter that this incident occurred December 22 rather than December 18.

contributing factor to the crash, and that mechanical failure was not involved.

*6. June 5, 2003.* Robert Benyo, Aerial Banners' owner and a mechanic for its aircraft, was cited for a paperwork violation concerning his mechanic's license.

*7. September 13, 2005.*[2] Following the irregular landing on September 26, 2003 off-field landing, an FAA investigation into Aerial Banners revealed a discrepancy concerning required maintenance forms filed September 13, 2005.

*8. December 12, 2005.* This was a paperwork violation discovered during the investigation of the December 22, 2005 hard landing. It appears that the FAA's investigation revealed that Aerial Banners' had not obtained proper certifications after making modifications to an airplane.

*9. December 5, 2007.* This violation, which was discovered during an investigation of the November 10 crash, appears to involve a new engine being installed on an Aerial Banners plane "without approved data . . . and [a] new airworthiness certificate."

In short, between 2005 and 2007, Aerial Banners saw two planes crash, two pilots engage in landings hard enough to damage the planes, one pilot run out of fuel and undertake an emergency landing outside an airport, and four paperwork

---

[2] The facts of this incident are not clear from the record. For purpose of argument, we will assume Aerial Banners' characterization of the incident is correct.

violations. (Calling the latter incidents paperwork violations understates the safety risks involved, as in some cases the airworthiness of Aerial Banners' planes could have been impacted by flying with unapproved modifications.) Two of the incidents caused injury to pilots. Pilot error caused the most serious incidents. In some cases, Aerial Banners pilots flew planes which they knew were in violation of the Special Provisions. None of the incidents caused injury to a third person or damage to property other than Aerial Banners' own aircraft. Aerial Banners does not dispute that these incidents occurred, but merely disputes their significance and the company's culpability.

## II.

Aerial banners contends that the FAA's decision to revoke its waiver was arbitrary and capricious, an abuse of discretion, and unsupported by substantial evidence, in violation of the Administrative Procedure Act. See 5 U.S.C. § 706. Venue and jurisdiction lie in this court pursuant to 49 U.S.C. § 46110(a), which provides, inter alia, for judicial review of FAA orders in the circuit court of appeals in which a "person disclosing a substantial interest" in the order "resides or has its principal place of business." We have authority to "affirm, amend, modify, or set aside any part of the order." 49 U.S.C. § 46110(c). We may also order the FAA's Administrator to conduct further proceedings if necessary. Id.

6

Importantly, "findings of fact by the . . . Administrator, if supported by substantial evidence, are conclusive." Id. As the foregoing implies, our review of the FAA's action is limited to the administrative record.

The standard of review is also deferential. See Eastern Airlines v. FAA, 772 F.2d 1508, 1511 (11th Cir. 1985). We will overturn the FAA's factual findings only if unsupported by substantial evidence in the administrative record. 49 U.S.C. § 46110(c); see also Boca Airport Inc. v. FAA, 389 F.3d 185, 189 (D.C. Cir. 2004). We will uphold the agency's decision unless it is arbitrary and capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706; see also Zukas v. Hinson, 124 F.3d 1407, 1409 (11th Cir. 1997); Boca Airport, 389 F.3d at 189. In other words, when reviewing agency action under the APA, we do not substitute our own judgment for the agency's about what action is warranted in the circumstances. Rather, we will set aside the FAA's order on substantive grounds only if the agency "relied on improper factors, failed to consider important relevant factors, or committed a clear error of judgment that lacks a rational connection between the facts found and the choice made." U.S. Steel Corp. v. Astrue, 495 F.3d 1272, 1279 (11th Cir. 2007) (citations omitted.) An agency may also act arbitrarily and capriciously by failing to follow its own regulations and procedures. Simmons v. Block, 782 F.2d 1545, 1550 (11th Cir.

1986). We will not consider arguments not raised before the FAA. Eastern Airlines, 772 F.2d at 1512.

We must also review the applicable law governing the issuance of waivers like the one that permitted Aerial Banners to operate. The law makes clear that the granting of such waivers is discretionary with the FAA. Federal statute gives the FAA Administrator discretionary authority to grant an exemption from air safety regulations "if the Administrator finds the exemption is in the public interest." 49 U.S.C. § 44701(f). FAA regulations further provide that the Administrator "may issue" a waiver of any safety rule "if the Administrator finds that the proposed operation can be safely conducted under the terms of that certificate of waiver." 14 C.F.R. § 91.903(a). Procedures for obtaining and cancelling a waiver are governed in more detail by Chapter 18 of FAA's Order 7210.3U. Paragraph 18-1-9 of that Order, "Cancellation of Waivers and Authorizations," provides as follows:

> A waiver or authorization may be canceled at any time by the Administrator [or other authorized officials]. As a general rule, a waiver or authorization should be canceled when it is no longer required or there is an abuse of its provisions or unforeseen safety factors develop. Failure to comply with the waiver or authorization is cause for cancellation. Cancellation procedures, as applicable, shall be used as follows:
> a. Notify the holder immediately.
> b. Verify and document the basis for the cancellation.

8

c. Notify the appropriate Service Area office, as well as the issuing office.

d. Provide the holder with written notice of cancellation, or written confirmation of a verbal cancellation, with copies to appropriate offices.

e. Take any other action deemed necessary.

In short, the language of statute, regulation, and FAA Order all make clear that the granting and revocation of waivers is a discretionary judgment for the FAA to make with the public interest in aviation safety in mind.

Aerial Banners argues that the revocation of its waiver (i) was unsupported by substantial evidence in the record, and (ii) was arbitrary and capricious, in that the FAA failed to follow its own regulations and procedures in Order 7210.3U for revoking a waiver. We begin with the "substantial evidence" argument, although in this case that appellation is a misnomer. The substantial evidence standard governs a challenge to the FAA's factual conclusions. 49 U.S.C. § 46110(c).[3] Aerial Banners agrees that all nine incidents cited in the revocation letter in fact occurred, and that the administrative record so reflects. Rather, Aerial Banners' "substantial evidence" argument is that the FAA has overstated Aerial Banner's culpability in the incidents, and that the FAA's response (revocation of the waiver)

---

[3] Substantial evidence challenges may also be raised to formal rulemakings pursuant to 5 U.S.C. § 556-57, or to "agency hearings provided by statute." 5 U.S.C. § 706(2)(E). No such challenge is raised here.

was disproportionate and unfair. This challenge is, in essence, that the agency's response was a substantive abuse of discretion. Properly understood, then, this challenge must be judged by the deferential standard for substantive APA review: the petitions should be granted only if the FAA "relied on improper factors, failed to consider important relevant factors, or committed a clear error of judgment that lacks a rational connection between the facts found and the choice made." U.S. Steel Corp., 495 F.3d at 1279. Aerial Banners' argument is based on the last prong. It argues that the facts showed pilot error, not deficient oversight by Aerial Banners management, was to blame for the most serious of the nine safety incidents, and hence that the FAA's decision to shut the company down lacks a rational connection to the facts, which do not show that the company poses a threat to aviation safety.

Aerial Banners' substantive APA challenge is deeply flawed. It relies in large measure on its own characterization of the nine incidents as trivial. The severity of the incidents may be subject to reasonable dispute, but that militates against finding the FAA's response to be an abuse of discretion. In a two year period, Aerial Banners suffered two crashes, two hard landings, a plane which ran out of fuel, and a record of making mechanical modifications to its planes without obtaining proper airworthiness certificates and clearance to fly thereafter. These

10

facts have ample connection to the company's ability to fly its planes safely; we can hardly conclude the FAA made a clear error of judgment or made a decision with no rational connection to the facts. Instead, weighing the gravity of these incidents, and deciding what response best serves the public interest in aviation safety, is precisely the sort of discretionary judgment where we should defer to the FAA's expertise.

Aerial Banners' also contends that the FAA erred by holding the company accountable for its pilots' errors. This argument is unpersuasive both as a factual matter, as Aerial Banners was not free from fault in the accidents, and as a legal matter, because the FAA is within its rights to hold Aerial Banners responsible for pilot errors which violate the terms of a waiver.

First, while Aerial Banners contends its maintenance practices were spotless, the record suggests otherwise. For example, one of the paperwork violations which the FAA's investigation uncovered was that Benyo installed an new engine on a plane, and then permitted it to be flown without proper documentation of its airworthiness. And one of the hard landings was attributed in part to an "inoperative banner release and inadequate installation of the banner tow-release hook assembly by company maintenance personnel." This violated the waiver's Special Provisions, which require the pilot to make a pre-flight

11

inspection and prohibit operation of the plane unless the banner apparatus, including its release handle, are inspected for satisfactory operation on a daily basis. And violation of the Special Provisions is itself sufficient grounds for revocation of the waiver.

Moreover, even if Aerial Banners had a spotless record in its maintenance and training practices, and the crashes and irregular landings were entirely a result of its pilots ignoring company policies, the FAA would still be within its discretion to hold Aerial Banners accountable. The waiver makes clear that the party to which the waiver is issued, Aerial Banners, is responsible for ensuring compliance with its conditions, including requirements such as pre-flight inspection of banner equipment by pilots. The distinction Aerial Banners seeks to draw between the culpability of its pilots and the culpability of the company itself is not one the Special Provisions permit. If the FAA wishes to hold Aerial Banner strictly liable for violations of the waiver's conditions by company pilots, it is within its rights under the Special Provisions. And given the FAA's mandate to ensure aviation safety, and its broad discretion to grant waivers only where it "finds the exemption is in the public interest," 49 U.S.C. § 44701(f), it is also well within its rights to insist on such Special Provisions in the first place. Since the waiver may be revoked for violations of the Special Provisions, and the

12

administrative record is crystal clear that Aerial Banners pilots violated those Provisions by flying with faulty equipment, the FAA's revocation was not arbitrary and capricious.

In short, the administrative record supports the FAA's decision to revoke Aerial Banner's waiver because the company, through its pilots, violated the terms of the waiver. And we will defer to the FAA's decision that revocation of the waiver is necessary for public safety. Aerial Banners' substantive APA challenge must be rejected.

Aerial Banners also raises a procedural APA challenge, contending that the FAA's revocation letter violated the agency's own procedures because it did not adequately explain the reason for the revocation. This argument is frivolous. Contrary to Aerial Banners' insinuation, the FAA's procedures for revoking a waiver do not require a revocation letter to contain a detailed explanation of the factual or legal basis for the agency's action. As the above-quoted provision of Order 7210.3U., paragraph 18-1-9(d) makes clear, a revocation letter's purpose is simply to notify the affected company of the FAA's decision. It need not recite chapter and verse. In any event, it is abundantly clear from the letter that Aerial Banner's waiver was revoked for repeated safety infractions; indeed, those infractions are specifically identified. The FAA followed its regulations and

13

provided adequate notice concerning the revocation; no error has been shown in this respect.

The petition for review is **DENIED.**