[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14841
Non-Argument Calendar

_____

Agency No. FAA 2016-5329

PRESIDENTIAL AVIATION INC.,

Petitioner,

versus

FEDERAL AVIATION ADMINISTRATION
FEDERAL AVIATION ADMINISTRATOR,

Respondents.

_____

Petition for Review of a Decision of the
Department of Transportation, Federal Aviation Administration

_____

(August 17, 2021)

Before MARTIN, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Presidential Aviation, Inc. petitions for review of a Federal Aviation

Administration decision ordering it to pay a civil penalty for repeatedly operating

an aircraft that was not in airworthy condition and failing to document a mechanical irregularity. We deny the petition.

I.

The parties stipulated to the facts giving rise to the FAA's complaint, and those facts remain undisputed. On October 21, 2014, Presidential operated an aircraft that departed from Bogota, Colombia and flew to Cuba, New York, Pennsylvania, and Florida, in that order. During the initial takeoff from the airport in Bogota, the aircraft's landing gear failed to retract, and an "AUTO SLATS" light illuminated. The pilot returned the aircraft to Bogota and contacted Presidential's maintenance department. After consulting with the maintenance director, the flight crew wiped grease from a proximity switch and verified that the "AUTO SLATS" light had gone out. They then reboarded the aircraft and departed—without testing the landing gear or documenting the problem in the aircraft's maintenance log.

According to Presidential, the aircraft completed the four flights scheduled that day without further incident. The last flight of the day involved transporting the owner of the aircraft from Pennsylvania to Florida. When the owner learned of the day's events, he instructed the crew to have the mechanical irregularities written up and have maintenance check the problem.

After the aircraft arrived in Florida, therefore, one of the pilots documented the incident in the maintenance log, and maintenance personnel performed a "gear swing" test to check the landing gear. The aircraft failed the test—the landing gear again would not retract and the "AUTO SLATS" light illuminated. Presidential then replaced the aircraft's left main proximity sensor.

The Federal Aviation Administration brought a complaint alleging (among other things) that Presidential failed to document a mechanical irregularity, in violation of 14 C.F.R. § 135.65(b), and operated an unairworthy aircraft on each of the four October 21, 2014 flights, in violation of 14 C.F.R. §§ 91.7(a) and 135.25(a)(2). The FAA proposed a civil penalty of $38,825 for the five alleged regulatory violations.

The administrative law judge (ALJ) granted in part a motion for summary judgment by the FAA, finding that Presidential violated § 135.65(b) by failing to document the problems with the landing gear and the illumination of the "AUTO SLATS" light. After a hearing, the ALJ determined that Presidential had also committed two violations each of §§ 91.7(a) and 135.25(a)(2) by operating the aircraft in an unairworthy condition on the four flights between Bogota and Florida. The ALJ disagreed to some extent with the FAA's proposed penalty, however, and instead imposed a total penalty of $22,158.

3

Both parties appealed the ALJ's decision. The Federal Aviation Administrator denied Presidential's appeal and granted the FAA's appeal in part, reversing the ALJ's sanctions determination and assessing a penalty of $36,750. Presidential now seeks our review of the Administrator's decision.[1]

## II.

We have statutory authority to "affirm, amend, modify, or set aside any part" of the Administrator's order. 49 U.S.C. § 46110(c). But our standard of review is deferential; "we will uphold the agency's decision unless it is arbitrary and capricious, an abuse of discretion, or otherwise contrary to law." *Aerial Banners, Inc. v. FAA*, 547 F.3d 1257, 1260 (11th Cir. 2008); *see* 5 U.S.C. § 706(2). This means that "we will set aside the FAA's order on substantive grounds only if the agency relied on improper factors, failed to consider important relevant factors, or committed a clear error of judgment that lacks a rational connection between the facts found and the choice made." *Aerial Banners, Inc.*, 547 F.3d at 1260 (citation and quotation marks omitted). And the Administrator's findings of fact "are conclusive" if supported by substantial evidence. 49 U.S.C. § 46110(c).

---

[1] We have jurisdiction to review the order issued by the Federal Aviation Administrator because Presidential, seeking review as a "person disclosing a substantial interest" in the order, has its principal place of business in this Circuit. 49 U.S.C. § 46110(a).

4

III.

In its petition, Presidential challenges (1) the Administrator's prehearing order granting summary judgment to the FAA on its claim that Presidential failed to document a mechanical irregularity in violation of 14 C.F.R. § 135.65(b); (2) the Administrator's finding that its aircraft was not in airworthy condition during the four October 21, 2014, flights, and the operation of the aircraft therefore violated 14 C.F.R. §§ 91.7(a) and 135.25(a)(2); and (3) the Administrator's partial grant of the FAA's appeal and assessment of a $36,750 civil penalty. We consider each argument in turn.

A.

Presidential contends that the Administrator erred in upholding the ALJ's grant of summary judgment in favor of the FAA on the allegation that it violated 14 C.F.R. § 135.65(b) by failing to document the landing-gear malfunction and illumination of the "AUTO SLATS" light. That regulation provides, in part, that the "pilot in command shall enter or have entered in the aircraft maintenance log each mechanical irregularity that comes to the pilot's attention during flight time." Presidential argues that whether "the wiping of the grease and/or the mere illumination of the Auto Slats enunciator" is a "mechanical irregularity" within the meaning of the regulation is a question of material fact that was not subject to resolution at summary judgment. We disagree—the interpretation of regulatory

5

terms presents a pure question of law.  *See Ed Taylor Const. Co. v. Occupational Safety & Health Rev. Comm'n*, 938 F.2d 1265, 1271 (11th Cir. 1991).

Presidential also argues that because it performed no maintenance to resolve the issues with the landing gear and indicator light before leaving Bogota the second time, there was no "mechanical irregularity" to record in the maintenance log.  But the regulation says nothing about whether maintenance was performed to resolve the problem; it requires documentation of any mechanical irregularity that comes to the pilot's attention during flight time, as these issues undoubtedly did when they prompted his return to Bogota.  And although the regulations do not define "mechanical irregularity," we find no error in the Administrator's conclusion that malfunctioning landing gear, at least, falls within the plain meaning of the term.  *See* OED Online, Oxford University Press (June 2021), https://www.oed.com/view/Entry/115544 (defining "mechanical, adj. and n." as "[o]f, relating to, or dealing with machinery or mechanisms") and https://www.oed.com/view/Entry/99673 (defining "irregularity, n." as "[w]ant of conformity to rule; deviation from or violation of a rule, law, or principle; disorderliness in action; deviation from what is usual or normal; abnormality, anomalousness") (accessed August 11, 2021).

B.

Presidential next challenges the Administrator's finding that it operated its aircraft in an unairworthy condition.  Airworthiness is not simply a matter of "flyability."  *Copsey v. Nat'l Transp. Safety Bd.*, 993 F.2d 736, 739 (10th Cir. 1993).  An aircraft is airworthy if it (1) "conforms to its type certificate," and (2) "is in condition for safe operation."  49 U.S.C. § 44704(d) (providing criteria for airworthiness certificate); *see Copsey*, 993 F.2d at 738.

The Administrator's finding that Presidential's aircraft was not airworthy when it departed from Bogota the second time and during each of the four October 21, 2014, flights is supported by substantial evidence.  The record makes clear that the aircraft was designed to have landing gear that extends and retracts, and that the landing gear failed to retract on the aircraft's initial takeoff from Bogota, causing an indicator light to illuminate.  It is also clear that Presidential did not test the landing gear at any time from its initial malfunction until after it completed its fourth flight of the day—and when it finally did conduct an operational test of the landing gear, the aircraft failed the test and had to be repaired by replacing a proximity sensor.  This evidence alone is sufficient to support a finding that the aircraft deviated from its type certificate, and was therefore not airworthy.  *See* 49 U.S.C. § 44704(a)(1) (providing criteria for issuance of a type certificate after approval of an aircraft's design, manufacture, and performance); *see also GoJet*

7

*Airlines, LLC v. FAA*, 743 F.3d 1168, 1171–72 (8th Cir. 2014) (holding that an aircraft designed with retractable landing gear did not conform to its type certificate when the landing gear was inoperable).

The Administrator's finding that the aircraft was unairworthy is also supported by the testimony of the FAA's expert witness, FAA safety inspector Carlos Enriquez.  At the hearing before the ALJ, Enriquez testified that wiping grease from the proximity switch and checking that the "AUTO SLATS" indicator was no longer illuminated was insufficient to resolve the landing gear's failure to retract; the only way to ensure that the aircraft was airworthy was to perform a "gear swing" test and verify that the landing gear operated correctly.  Enriquez opined that because Presidential did not conduct an operational test of the landing gear, the aircraft had unresolved mechanical discrepancies and was therefore not in conformance with its type certificate during its flights later that day.

Not surprisingly, Presidential's expert in aviation maintenance, Paul Marx, disputed this position.  At the hearing, Marx testified that although the aircraft was not in airworthy condition when the "AUTO SLATS" indicator came on, wiping the grease from the proximity switch and checking that the "AUTO SLATS" light had gone out solved the issue and rendered the aircraft airworthy again.  Marx's hearing testimony was undermined, however, by his earlier deposition testimony, in which he (1) agreed that checking the "AUTO SLATS" indicator did not resolve

8

the issue with the landing gear, and that Presidential should have conducted a "gear swing" test to ensure that the landing gear was operational; (2) testified that the "AUTO SLATS" light would have gone out automatically when the aircraft landed; and (3) declined to offer an opinion as to the aircraft's airworthiness.

In any event, in determining whether the agency's findings are supported by substantial evidence, we will not overturn the agency's "choice between two fairly conflicting views" of the evidence, even if we might have made a different choice if the matter had been before us de novo. *City of Pompano Beach v. FAA*, 774 F.2d 1529, 1540 (11th Cir. 1985) (citation omitted). It "is not our function to reevaluate the weight of the evidence or to reexamine credibility choices made by the fact finder." *Id.* Because the agency's finding that Presidential's aircraft was not in airworthy condition is supported by substantial evidence, we decline to overturn its decision that Presidential violated federal aviation regulations by repeatedly operating an unairworthy aircraft.

## C.

Last, Presidential challenges the Administrator's assessment of sanctions. Presidential argues that the Administrator's $36,750 penalty was "contrary to law" because it did not give adequate deference to the ALJ's determination that a lower sanction was appropriate. Presidential also contends that the Administrator exceeded its jurisdiction because one component of the penalty—a $7,150 sanction

for Presidential's deliberate failure to record the mechanical irregularity—was higher than the amount suggested by the FAA in its closing arguments. We are not persuaded by either argument.

On appeal from the ALJ's decision, the Administrator considers whether the ALJ's factual findings are "supported by a preponderance of reliable, probative, and substantial evidence;" whether its legal conclusions are made in accordance with applicable law, precedent, and public policy;" and whether the ALJ "committed any prejudicial errors that support the appeal." 14 C.F.R. § 13.233. Here, the Administrator determined that the ALJ's penalty calculation was not made in accordance with applicable law, precedent, and policy because the ALJ (1) erroneously treated the calculation of the appropriate penalty as a question of fact that the FAA was required to "prove," (2) failed to apply agency precedent establishing the appropriate method for calculating sanctions, and (3) erred by not considering applicable aggravating factors. The Administrator also found that the ALJ's errors were prejudicial because they created "substantial doubt" that the same result would have been reached in the absence of the errors.

Presidential does not challenge the Administrator's findings of error; instead, its argument seems to be that the Administrator failed to explain why it rejected the ALJ's penalty calculation. This argument is plainly refuted on the face of the record.

10

Presidential also argues that the Administrator exceeded its authority when it imposed a higher sanction for its violation of 14 C.F.R. § 135.65(b) than the FAA suggested in its closing argument, based in part on the Administrator's finding that Presidential deliberately failed to document the malfunctioning landing gear and illuminated warning light to avoid having to arrange for maintenance in Bogota. Presidential cites no authority for this contention, and we find no support for the argument in the applicable regulation. Section 13.16(j) of the federal aviation regulations provides that the "FAA decisionmaker may assess a civil penalty but shall not assess a civil penalty in an amount greater than that sought in the complaint." Here, the FAA sought a civil penalty of $38,825 in its complaint, and the Administrator assessed a penalty of $36,750. The amount of the penalty imposed did not exceed the amount sought in the FAA's complaint and did not exceed the Administrator's authority under the regulation.

## IV.

For the foregoing reasons, we find no reversible error in the agency's final decision finding that Presidential violated 14 C.F.R. §§ 91.7(a), 135.25(a)(2), and 135.65(b) and assessing a civil penalty of $36,750. The petition for review is therefore **DENIED**.

11